# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Stahl*, 2013 IL App (5th) 110385

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. TERRIS E. STAHL, Defendant-Appellee. |
| District & No. | Fifth District<br>Docket No. 5-11-0385 |
| Filed | February 19, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant was rendered unfit to stand trial on charges of home invasion and aggravated unlawful restraint arising from an incident in which he invaded the residence of his former wife, since the brain injury he suffered when he shot himself with one of his weapons rendered him unable to recall any of the events surrounding the incident and there was testimony that defendant could not understand the nature of the proceedings against him or assist in his defense. |
| Decision Under Review | Appeal from the Circuit Court of St. Clair County, No. 09-CF-567; the Hon. Jan V. Fiss, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal    Brendan F. Kelly, State's Attorney, of Belleville (Patrick Delfino, Stephen E. Norris, and Jennifer Camden, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Justin A. Kuehn and Matthew P. Young, both of Kuehn Law Firm, of Belleville, for appellee.

Panel    JUSTICE CHAPMAN delivered the judgment of the court, with opinion. Justices Welch and Goldenhersh concurred in the judgment and opinion.

**OPINION**

¶ 1    The defendant, Terris E. Stahl, is unable to remember any of the events surrounding the incidents leading to charges of home invasion and aggravated unlawful restraint due to brain damage resulting from a self-inflicted gunshot wound. He was found unfit to stand trial. After a subsequent fitness restoration hearing, the court again found that the defendant was unfit to stand trial and that it was not reasonably probable that he could be fit within one year. The State appeals, arguing that the defendant's inability to recall events does not render him unfit to stand trial. We affirm.

¶ 2    The events at issue occurred shortly after the defendant's former wife, Erin Kruep, filed for divorce. According to testimony presented at a discharge hearing after the initial finding of unfitness, Kruep spent the evening of April 5, 2009, at her home with Chuck Smith (a friend of both Kruep and the defendant), Alyssa Schmitt (Kruep's 17-year-old babysitter), and William Marshall (Schmitt's boyfriend). At 1 in the morning, Kruep went to bed and invited her three guests to stay overnight. Marshall left some time later, but Smith fell asleep in Kruep's guest room and Schmitt fell asleep on the living room sofa. Kruep and the defendant had a four-year-old son, Owen, who was asleep in his bedroom when these events took place.

¶ 3    At 4 in the morning, Kruep and Schmitt woke up when they heard glass break and Kruep's burglar alarm go off. The defendant pointed a gun at Schmitt and demanded to know where Kruep was. He then found Kruep in her bedroom, pointed a gun at her, and threatened to kill her. The defendant woke Smith by going to the guest room and pointing a second gun in Smith's face. With one gun pointed at Kruep and Schmitt and the other pointed at Smith, the defendant told them that they were all "gonna die" that night. Kruep managed to call 9-1-1 on her cell phone and ask for help before the defendant knocked the phone from her hand.

¶ 4    The defendant ordered Kruep, Schmitt, and Smith into the basement. He continued to hold all three at gunpoint, with one gun in each hand. He told Kruep that if she would take

him back, he would change. However, he then fired a shot into the wall and told her, "Now you know I'm serious, bitch."

¶ 5 Owen woke up and turned on the bathroom light. The defendant allowed Schmitt to go upstairs to take care of him. While Schmitt was upstairs with Owen, she looked out the window and saw a police officer outside who had arrived in response to Kruep's 9-1-1 call. Schmitt motioned to the officer through the window. She held her hand in the shape of a gun and pointed to her head, then pointed down the hallway toward the basement door. The officer returned to his squad car and called for backup. Schmitt took Owen and left the house.

¶ 6 The defendant continued to point the guns at Kruep and Smith. He told Kruep that if he could not have her, he would kill her. Later, the police tactical response force arrived at the house. An officer attempted to talk to the defendant with a megaphone. The defendant eventually decided that he would be willing to talk to a police officer he knew if that officer was at the scene. He sent Smith upstairs to find out whether the officer was there. Some time later, the defendant told Kruep that he did not want to go to jail. He told her what kind of funeral he wanted and what he wanted her to tell their son about his death. He then told her to leave. As Kruep was leaving, she heard a gunshot. She ran from the house and told the officers that the defendant had shot himself.

¶ 7 The defendant was found lying facedown in a doorway on the main floor of Kruep's home. He was taken to the hospital. A trail of blood led from the defendant down the stairs leading to the basement. Two guns were found in the basement, including a .22 that was found in a pool of blood with its hammer cocked.

¶ 8 The defendant was arrested in May 2009 and charged with home invasion (720 ILCS 5/12-11(a)(1) (West 2008)) and aggravated unlawful restraint (720 ILCS 5/10-3.1(a) (West 2008)). He was conditionally released to live with his parents because the county jail could not meet his medical needs. He was indicted on both charges on June 12, 2009. On October 1, 2009, the defendant filed a motion for a hearing to determine his fitness to stand trial.

¶ 9 Prior to the initial fitness hearing, two psychologists provided opinions, Dr. Kenneth Gilbert and Dr. John Rabun. Dr. Kenneth Gilbert initially evaluated the defendant in July 2009, after the defendant's mother hired him to evaluate the defendant's risk of suicide. Dr. Gilbert provided a report in January 2010 based upon his July 2009 evaluation. He opined that the defendant suffered two types of memory deficit as a result of the gunshot wound. First, the defendant was unable to recall the events at issue or anything that happened in the 48 hours leading up to those events. Second, the defendant's ability to form new short-term memories was severely impaired. Dr. Gilbert explained that this short-term memory impairment would make it impossible for the defendant "to track what happened in court from one day to the next."

¶ 10 Dr. Gilbert explained that the type of brain injury sustained by the defendant could lead to memory loss because the "swelling and distortion of brain tissue" caused by the gunshot interrupts the process of creating neurological connections that establish memories. Dr. Gilbert opined that it was possible for the defendant's short-term memory impairment to improve, although he could not predict with any certainty whether this would be the case. He

opined, however, that there was "no probability" that the defendant would recover his memories of the events at issue or the 48 hours leading up to them. He concluded that the defendant could not understand the nature of the proceedings against him or assist in his own defense.

¶ 11    Dr. John Rabun was retained by the State to perform an independent evaluation of the defendant. He provided a report in April 2010. Dr. Rabun essentially agreed with Dr. Gilbert. He found that the defendant had no memory of the day of the events charged as well as "significant deficits in his capacity to learn and retain new information." Dr. Rabun noted that the defendant's cognitive difficulties were significant enough that his father had been appointed to act as his plenary legal guardian as a result. Dr. Rabun concluded that the defendant was unable to understand the nature of the proceedings against him and unable to assist in his defense. He opined that all of the defendant's memory impairments were unlikely to improve.

¶ 12    In July 2010, the matter was called for a hearing. The parties stipulated that Dr. Gilbert and Dr. Rabun would testify in accordance with the opinions expressed in their reports if called to testify. In light of the fact that both psychologists believed that the defendant was not fit to stand trial, the State stipulated to a finding of unfitness. The court held a discharge hearing in November 2010. After hearing the testimony set out previously, the court found the defendant "not guilty" and ordered him committed to Alton Mental Health Center. The defendant was admitted to Alton on February 24, 2011.

¶ 13    On March 17, 2011, Alton staff filed a progress report with the court indicating that the defendant was now fit to stand trial. See 725 ILCS 5/104-18(a)(2) (West 2010). The report was signed by Dr. David Montani, a staff psychologist who was treating the defendant. Dr. Montani stated that the defendant still was completely unable to recall the events at issue and continued to have difficulty in forming new memories. He explained that the defendant had been tested by Dr. Ronald Sellers to assess the extent of his memory deficit. Dr. Sellers' testing revealed that the defendant was in the bottom percentile in his ability to recall new information after 20 to 30 minutes. Dr. Montani nevertheless opined that the defendant was fit to stand trial. He noted that the defendant was able to tell him the roles of the judge, prosecutor, defense counsel, and jury in a trial. He also noted that the defendant was able to discuss with him the proceedings at the November 2010 discharge hearing.

¶ 14    The court held a fitness restoration hearing on May 13, 2011. At the outset of the hearing, defense counsel stated that "both parties would ask the court to take judicial notice of all the prior reports." He noted that this included the reports of Dr. Gilbert and Dr. Rabun from 2010, which had previously been admitted. The prosecutor stated, "That's correct, Your Honor."

¶ 15    Dr. Montani testified for the State that the defendant had a basic understanding of the charges against him and the possible penalties as well as the roles of courtroom personnel. He further testified that when he discussed the November 2010 discharge hearing with the defendant, the defendant was able to recall and discuss the evidence presented at that hearing. The defendant was able to tell Dr. Montani about discrepancies in the testimony of witnesses at the hearing and comment on the fact that no gunshot residue testing was conducted. Dr.

Montani acknowledged that the defendant still suffered from significant short-term memory impairment, but he believed that this would not prevent him from functioning in the context of a trial if he were provided with note-taking materials and sufficient breaks during the testimony to confer with counsel. Dr. Montani also acknowledged that the defendant was still completely unable to recall any of the events charged in the indictment. He testified that the defendant was not likely to recover these memories through treatment.

¶ 16 Criminal defense attorney John O'Gara testified as an expert witness for the defendant. He described how the defendant's inability to remember the relevant events could impact his ability to assist defense counsel. O'Gara explained that there was no way for the defendant to tell his attorney his version of the events at issue or what his state of mind was at the time, information that is critical to determining what defenses might be available. He further testified that the defendant cannot meaningfully testify in his own defense because he cannot remember the events at issue. Finally, O'Gara testified that the defendant cannot even intelligently decide how to plead because he does not know whether he committed any of the acts charged.

¶ 17 The court then heard arguments from the parties' attorneys. The defendant argued that the State was required to prove the defendant fit to stand trial by clear and convincing evidence, while the State argued that it only needed to prove he was fit by a preponderance of the evidence. The court asked both parties to submit proposed orders that addressed the appropriate standard. The court then took the matter under advisement.

¶ 18 On May 24, 2011, the court entered an order finding that the defendant was unfit to stand trial and was unlikely to become fit again. The State filed a motion to reconsider, which the court denied. The State then filed the instant appeal.

¶ 19 The State contends that the trial court's ruling was against the manifest weight of the evidence because a defendant's amnesia related to the events surrounding the charges against him is not sufficient to support a finding of unfitness. We disagree.

¶ 20 A defendant is not fit to stand trial if he is unable to understand the purpose and nature of the proceedings against him or if he is unable to assist counsel in his defense. *People v. Clay*, 361 Ill. App. 3d 310, 330, 836 N.E.2d 872, 889 (2005) (quoting 725 ILCS 5/104-10 (West 2000)). Once a *bona fide* doubt is raised as to the defendant's fitness to stand trial, the State must prove the defendant fit by a preponderance of the evidence. *Clay*, 361 Ill. App. 3d at 331, 836 N.E.2d at 889. In determining a defendant's fitness, courts are to consider, among other things, the "defendant's ability to observe, recollect and relate occurrences, *especially those concerning the incidents alleged.*" (Emphasis added.) 725 ILCS 5/104-16(b)(2) (West 2010). On appeal from a court's determination regarding a defendant's fitness to stand trial, we review to determine whether the court's finding was against the manifest weight of the evidence. *Clay*, 361 Ill. App. 3d at 331, 836 N.E.2d at 889.

¶ 21 As previously noted, the defendant in this case suffers from two types of memory impairment, both of which have some impact on his fitness to stand trial. However, there is evidence that the defendant's short-term memory improved somewhat, and Dr. Montani opined that the defendant could overcome his difficulties with reasonable accommodations. On appeal, the defendant focuses his arguments on his complete amnesia as to the events at

issue in the indictment. For purposes of this appeal, we may assume that the defendant's short-term memory impairment can be accommodated adequately and focus our discussion on whether his inability to recall the events at issue makes him unfit to stand trial. For the reasons that follow, we conclude that it is.

¶ 22    In support of its position, the State cites *People v. Schwartz*, 135 Ill. App. 3d 629, 482 N.E.2d 104 (1985). There, the defendant was charged with arson and murder. *Schwartz*, 135 Ill. App. 3d at 631, 482 N.E.2d at 105-06. Like the defendant here, the defendant in *Schwartz* suffered a self-inflicted gunshot wound and was unable to remember the events involved in the charges against him. *Schwartz*, 135 Ill. App. 3d at 632, 482 N.E.2d at 106. At a hearing to determine his fitness to stand trial, a psychiatrist testified that the defendant could not recall the events of the day of the offenses but could understand the nature and purpose of the proceedings and communicate with his attorney. *Schwartz*, 135 Ill. App. 3d at 632, 482 N.E.2d at 106. The court found the defendant fit to stand trial. The defendant continued to assert the issue of his fitness throughout the trial without success. *Schwartz*, 135 Ill. App. 3d at 632, 482 N.E.2d at 106.

¶ 23    The defendant pled not guilty by reason of insanity. *Schwartz*, 135 Ill. App. 3d at 635, 482 N.E.2d at 108. Both the defendant and the State presented extensive testimony about the events in the weeks leading up to the offenses. *Schwartz*, 135 Ill. App. 3d at 633, 482 N.E.2d at 107. This included the defendant's own testimony. *Schwartz*, 135 Ill. App. 3d at 635, 482 N.E.2d at 108.

¶ 24    On appeal, the defendant argued that the trial court erred in finding him fit to stand trial. *Schwartz*, 135 Ill. App. 3d at 636-37, 482 N.E.2d at 109. The Second District found that although the defendant was unable to "cooperate in his defense concerning the amnesiac period," he was able to communicate with his attorney about trial decisions. *Schwartz*, 135 Ill. App. 3d at 638-39, 482 N.E.2d at 110-11. The court found that this was all our statute contemplates in providing that a fit defendant is one who is able to assist in his own defense. *Schwartz*, 135 Ill. App. 3d at 639, 482 N.E.2d at 111.

¶ 25    In addition, the defendant there raised general due process concerns regarding the impact of his memory loss on the fairness of his trial. More specifically, he argued that his memory loss prevented him from offering his own testimony as to his state of mind at the time the offenses took place. *Schwartz*, 135 Ill. App. 3d at 639, 482 N.E.2d at 111. In rejecting this claim, the appellate court noted that the defendant was able to tell his attorney about the events leading up to the arson and murder which supported his insanity defense. The defendant was even able to testify about these events. *Schwartz*, 135 Ill. App. 3d at 640, 482 N.E.2d at 111-12. The court found that under the "particular circumstances" before it, the defendant was able to fully develop and present his insanity defense. *Schwartz*, 135 Ill. App. 3d at 640, 482 N.E.2d at 112.

¶ 26    We believe the *Schwartz* court ignored express statutory language applicable to fitness hearings. As previously stated, the statute expressly provides that the court should consider the defendant's ability to recall the events involved in the charges against him and relate those to defense counsel. Indeed, the statute emphasizes the defendant's ability to relate these events. 725 ILCS 5/104-16(b)(2) (West 2010). We thus decline to follow *Schwartz*. See

*People v. Pruitt*, 239 Ill. App. 3d 200, 209, 606 N.E.2d 866, 872 (1992) (noting that one district of the appellate court is not required to follow the holding of another district of the appellate court).

¶ 27        It is also important to note that, while the *Schwartz* court held that complete amnesia of the events surrounding the charged behavior does not automatically support a finding of unfitness, the court did *not* hold that a defendant who lacks any memory of the events at issue may *never* be found unfit on this basis alone. In that regard, the instant case is distinguishable from *Schwartz*. In *Schwartz*, the defendant was able to provide his attorney with information about the events leading up to the charged incident that helped him present his insanity defense. Here, the defendant is unable to recall anything that occurred in the 48 hours leading up to the events at issue, and there is no indication that an insanity defense would be appropriate or that the defendant can provide his attorney with any information that will help him to present any other defense.

¶ 28        The State argues, however, that concerns about a defendant's ability to remember the events at issue are more properly raised in an appeal *after* trial and framed in terms of general due process concerns. In support of this argument, the State points to the procedural history of *Schwartz*. There, as previously discussed, the defendant challenged his conviction on the grounds both that he should not have been found fit to stand trial and that his inability to remember events deprived him of a fair trial because he could not present all of the evidence relevant to his insanity defense. We have already rejected the holding in *Schwartz*. Moreover, we do not read the opinion to hold that a defendant suffering from amnesia must always go through a trial and then challenge his conviction on general due process grounds instead of challenging the court's fitness determination. As we have already discussed, the applicable statute expressly emphasizes the defendant's ability to recall and relate to counsel the events at issue in the charges against him. Here, the defendant has no such ability. To hold that this issue is not a question of fitness would be at odds with the very purpose of our provisions related to fitness to stand trial.

¶ 29        The State further argues that the defendant in fact can assist in his own defense because he is able to review police reports and discuss witness testimony with his attorney. We are not persuaded. The defendant here is unable to provide counsel with any information at all concerning the events at issue. This is far more critical aid to a defense attorney than the ability to read police reports and assess witness testimony. The defendant's recollection of the events at issue is information the attorney has no other means of obtaining. Thus, the fact that the defendant may be able to discuss aspects of the trial with his attorney does not override the fact that he is unable to provide his attorney with any information concerning the crimes charged.

¶ 30        In addition, the State argues that the court erred in considering the reports of Dr. Gilbert and Dr. Rabun because our fitness statute addresses a defendant's current condition, and those reports were based on evaluations of the defendant which took place more than a year before the fitness restoration hearing. This argument correctly states the law. *Schwartz*, 135 Ill. App. 3d at 631, 482 N.E.2d at 105-06. However, the undisputed medical evidence showed that while the defendant's condition had improved in some respects, his inability to recall the relevant events had not changed. We also note that the State acquiesced to the

defendant's request that the court take judicial notice of the reports and that Dr. Montani considered them in rendering his opinion. We find no error.

¶ 31 Finally, the State argues that the court was not free to disregard Dr. Montani's expert opinion where there was no opinion to contradict it. Again, we disagree. As previously discussed, all of the psychological evidence–including Dr. Montani's testimony and reports–indicated that the defendant had no memory of the events at issue and was unlikely ever to recover his memory of what occurred. Dr. Montani's conclusion that the defendant was fit to stand trial was a legal conclusion, not a psychiatric opinion. The ultimate legal conclusion as to the defendant's fitness was an issue for the court to determine. *People v. Haynes*, 174 Ill. 2d 204, 231, 673 N.E.2d 318, 331 (1996).

¶ 32 For the reasons stated, we affirm the trial court's order finding the defendant unfit to stand trial.

¶ 33 Affirmed.