# Illinois Official Reports

## Supreme Court

***People v. Stahl*, 2014 IL 115804**

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. TERRIS E. STAHL, Appellee. |
| Docket No. | 115804 |
| Filed | May 22, 2014 |
| Held (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Amnesia as to the events surrounding the crime charged does not *per se* create unfitness for trial, but, under the totality of circumstances test, an unfitness finding was upheld as not against the manifest weight of the evidence where such an accused also had difficulties with short term memory which impacted his ability to communicate with counsel and assist in his defense. |
| Decision Under Review | Appeal from the Appellate Court for the Fifth District; heard in that court on appeal from the Circuit Court of St. Clair County, the Hon. Jan V. Fiss, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Lisa Madigan, Attorney General, of Springfield, and Brendan Kelly, State's Attorney, of Belleville (Michael A. Scodro and Carolyn E. Shapiro, Solicitors General, and Michael M. Glick and Gopi Kashyap, Assistant Attorneys General, of Chicago, and Patrick Delfino, Stephen E. Norris, and Jennifer Camden, of the Office of the State's Attorneys Appellate Prosecutor, of Mt. Vernon, of counsel), for the People.

Matthew P. Young, of The Kuehn Law Firm, of Belleville, for appellee.

Justices

JUSTICE KARMEIER delivered the judgment of the court, with opinion.
Chief Justice Garman and Justices Freeman, Thomas, Kilbride, Burke, and Theis concurred in the judgment and opinion.

## OPINION

¶ 1    Due to brain damage from a self-inflicted gunshot wound to his face, defendant, Terris E. Stahl, cannot remember any of the events surrounding the incidents leading to home invasion (720 ILCS 5/12-11(a)(4) (West 2010)) and aggravated unlawful restraint (720 ILCS 5/10-3.1(a) (West 2010)) charges against him. The trial court found defendant unfit to stand trial. Later, after a discharge hearing, he was found "not not guilty" of the charges against him and the circuit court of St. Clair County remanded him to the Department of Human Services (DHS) for extended terms of treatment of 24 months for home invasion and 15 months for unlawful restraint. After DHS determined that defendant had been restored to fitness, a fitness restoration hearing was held and the trial court found that defendant remained unfit to stand trial and that it was not reasonably probable that he would be fit within one year. The State appealed, arguing that the trial court's ruling that defendant remained unfit to stand trial was against the manifest weight of the evidence because a defendant's amnesia related to the events surrounding the charges against him is not sufficient, in and of itself, to support a finding of unfitness. The appellate court affirmed. 2013 IL App (5th) 110385, ¶¶ 19, 33. This court granted the State's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. July 1, 2013).

¶ 2                                BACKGROUND
¶ 3    The following testimony about the crimes was presented at the discharge hearing held after the initial finding of unfitness. Defendant's former wife, Erin Kreup, filed for divorce from defendant, and shortly thereafter he threatened to shoot her. Erin then sought and obtained an order of protection, which prohibited defendant from entering her home or coming within 500 feet of her. She also changed the locks and installed an alarm system at her home.

¶ 4       A few weeks later, at approximately 4 a.m. on April 6, 2009, defendant broke into Erin's home. At the time, Erin and Owen, the four-year-old son of Erin and defendant, were asleep in the master bedroom; Owen's babysitter, Alyssa Schmitt, was asleep on the living room couch; and Chuck Smith, a mutual friend of Erin and defendant, was asleep in the guest bedroom. Erin and Alyssa were awakened by sounds of breaking glass and the alarm going off. Defendant entered Erin's bedroom and forced her into the living room at gunpoint. Erin managed to dial 911, scream for help, and report that defendant was in her home before defendant knocked the phone out of her hand. By this time, defendant had awakened Chuck at gunpoint.

¶ 5       Defendant told Erin, Alyssa, and Chuck that they were all going to die that night and, at gunpoint, ordered them into the basement. There, defendant put a gun in Erin's face, stating he would change because he wanted his family to work and did not want anyone else to be with Erin. Defendant then put a gun to his head and threatened to kill himself. When Erin told him not to, defendant pointed the gun at her, moved the gun slightly away, and fired, saying, "Now you know I'm serious, bitch."

¶ 6       After defendant separated Erin from Alyssa and Chuck, he told Erin that his keys did not work and that he had walked around the house for 30 to 40 minutes trying to get in before using a hammer to break the back door. He threatened to kill Erin and himself and stated that the burglar alarm was the only thing that saved Erin's life.

¶ 7       Defendant allowed Alyssa to go upstairs to check on Owen after they heard a noise upstairs. While Alyssa was upstairs, she saw a police officer outside and motioned to him, holding her hand in the shape of a gun and pointing to her head and then pointing down the hallway toward the basement door. The officer returned to his squad car and called for backup. Alyssa took Owen and left the house.

¶ 8       Defendant continued holding Erin and Chuck at gunpoint. Defendant told Erin that if he could not have her, he would kill her. A tactical response team arrived, and an officer tried to talk to defendant by megaphone. Defendant eventually decided that he would talk to an officer he knew, if that officer was there. Defendant sent Chuck upstairs to see if the officer was there. Police officers directed Chuck out the front door.

¶ 9       When Chuck did not return to the basement, defendant again threatened to kill Erin and stated that he would not go to prison "over this." He told Erin to tell Owen that he would always love him, to take Owen to his parents' house, what to do with his insurance policy and car, how to arrange his funeral, and to visit his grave site with cigarettes and flowers. He said goodbye to Erin, kissed her cheek, hugged her, and told her to leave. As she backed up toward the stairway, defendant, pointing a gun at her, said, "I'll see you on the other side." She turned to go up the stairs, heard a gunshot and ran up the stairs. When she exited the house, she was hysterical and said that defendant had shot himself in the face.

¶ 10       Defendant was found lying face down and bleeding at the top of the basement stairs. He was taken to the hospital by ambulance. The crime scene revealed blood near defendant's head, down the basement steps, in the basement away from the steps to the southwest corner, and in the corner. No blood was found on Erin, Alyssa, or Chuck. Two firearms, both operational and in firing condition, were found in the basement: (1) a .22-caliber revolver found in a pool of blood with its hammer cocked, two discharged casings, and seven unfired

cartridges in the cylinder; and (2) a .32-caliber revolver with one fired cartridge and four unfired cartridges in the cylinder. The glass in the rear door to the house was shattered.

¶ 11    Firearms expert Ronald Locke testified that, in his experience, there have been cases where someone with a severe gunshot wound to the head continued to have the ability to fire and/or reload a weapon. Locke did not examine defendant's ability to reload a weapon or conduct additional testing normally performed in suicide cases. Police did not take Erin's fingerprints, test her for gunshot residue, or examine the firearms and bullets in comparison to defendant's alleged position and injuries; nor did police find a fired bullet in the basement.

¶ 12    Defendant survived his injury and, in May 2009, was charged by complaint with home invasion and aggravated unlawful restraint. Defendant was conditionally released to live with his parents because the county jail could not meet his medical needs. In June 2009, defendant was indicted on both charges.

¶ 13    On October 1, 2009, defendant filed a motion challenging his fitness to stand trial under article 104, "FITNESS FOR TRIAL, TO PLEAD OR TO BE SENTENCED," of the Code of Criminal Procedure of 1963 (Code). See 725 ILCS 5/104-11 (West 2010). Prior to the hearing on this motion, two psychiatrists had provided opinions as to defendant's fitness: Dr. Kenneth Gilbert and Dr. John Rabun. Dr. Gilbert initially interviewed defendant on July 30, 2009, after defendant's mother hired him to evaluate defendant's risk of suicide. On January 18, 2010, Dr. Gilbert provided a report based on his July 2009, evaluation. He opined that defendant suffered two types of memory deficit as a result of the gunshot wound. First, defendant could not recall the events at issue or anything that happened in the 48 hours leading up to those events. Second, his ability to form new short-term memories was severely impaired. While Dr. Gilbert found defendant to be totally aware of the charges against him and the potential for long-term punishment if convicted, he found defendant unfit to stand trial because of his inability to recall the events of the day in question. Dr. Gilbert also found that defendant could not cooperate with his attorney to assist in his own defense because his short-term memory impairment would make it impossible for him "to track what happened in court from one day to the next," and because he lacked an "appreciation of the seriousness of the potential consequences for his life." Dr. Gilbert thought that it was possible that defendant's short-term memory would improve, but he could not predict whether this would occur. Further, Gilbert concluded that there was no probability that defendant would recover his memories of the events at issue or the 48 hours leading up to those events, which would, in and of itself, render defendant unfit to stand trial.

¶ 14    The State retained Dr. John Rabun to independently evaluate defendant in response to his motion challenging his fitness. On April 30, 2010, Dr. Rabun provided a report finding that defendant had no memory of the day of the events charged and had "significant deficits in his capacity to learn and retain new information." He noted that defendant's cognitive difficulties were significant enough that his parents had been appointed to act as his plenary legal guardians. Dr. Rabun concluded that defendant lacked the capacity to understand the nature of the proceedings against him and to assist in his own defense. Dr. Rabun noted that if defendant's amnesia as to the day of the events charged were his only impairment, it would be Dr. Rabun's opinion that defendant was fit to stand trial. He also maintained that defendant had

reached his maximum improvement in his cognitive abilities and would not regain his capacity to stand trial within one year.

¶ 15    At the July 21, 2010, fitness hearing, the parties stipulated that, if called to testify, Dr. Rabun would testify in accordance with the opinions expressed in his report. The parties also stipulated to Dr. Rabun's finding that defendant was unfit to stand trial and that there was not a substantial probability that he would attain fitness within one year. Accordingly, the trial court entered an order, finding that defendant was unfit to stand trial and that there was no substantial probability that he would attain fitness within one year.

¶ 16    On November 15, 2010, the trial court held a discharge hearing. See 725 ILCS 5/104-25 (West 2010). After hearing evidence about the crimes and arguments of counsel, the court took the matter under advisement. On November 24, 2010, the court entered an order finding defendant "not not guilty" of home invasion and aggravated unlawful restraint and remanding him to the custody of DHS for extended terms of treatment of 24 months for home invasion and 15 months for unlawful restraint. See 725 ILCS 5/104-25(d) (West 2010). On February 24, 2011, defendant was admitted to Alton Mental Health Center. Less than one month later, on March 18, 2011, staff there filed a progress report signed by Dr. David Montani, a psychiatrist who was treating defendant, indicating that he was now fit to stand trial. See 725 ILCS 5/104-18(a)(2) (West 2010).

¶ 17    On May 13, 2011, the trial court held a fitness restoration hearing. The State tendered three recent progress reports, and both parties asked the court to take judicial notice of all prior reports, including the 2010 reports of Drs. Gilbert and Rabun. Dr. Montani testified for the State that, in his opinion, defendant was fit to stand trial if the court made certain accommodations for any short-term memory deficits. Because defendant understood the charges, the possible penalties if convicted, the roles of court personnel, his pleading options, and other basic rights, Dr. Montani concluded that defendant was able to understand the nature and purpose of the proceedings against him. He also believed that defendant was able to assist in his defense, explaining that in March 2011, defendant had discussed the details of the November 15, 2010, discharge hearing with him. Defendant discussed the order of the witnesses who testified and his perceived shortcomings in the evidence including, *inter alia*, inconsistencies between the testimony of Erin and police, lack of any fingerprint or gunshot residue testing, and issues raised by the blood trail in the basement. Dr. Montani found it significant that after retaining information from the discharge hearing, defendant was able not only to verbally articulate those memories, but also to draw conclusions from that retained information. He also noted defendant's ability to learn and comply with the rules at Alton Mental Health Center.

¶ 18    Dr. Montani acknowledged that testing to assess the extent of defendant's memory deficit showed he was in the bottom percentile in his ability to recall new information after 20 to 30 minutes. It was his opinion, however, that reasonable accommodations, including allowing defendant to take notes and giving him frequent recesses to confer with counsel, would compensate for his short-term memory deficits. Thus, Dr. Montani concluded that defendant's difficulties in forming new memories did not prevent him from assisting in his defense. He

believed that defendant's amnesia as to the events that led to the charges against him, by itself, was insufficient to find him unfit.

¶ 19 Criminal defense attorney John O'Gara testified as an expert witness for defendant. O'Gara described how defendant's amnesia as to the relevant events could negatively impact his ability to assist defense counsel. O'Gara explained that: (1) defendant could not tell counsel his version of the events or what his state of mind was at the time, information that is critical to understanding what defenses might be available; (2) he could not meaningfully testify in his own defense because he could not remember the events at issue; and (3) he could not even intelligently decide how to plead because he did not know whether he committed any of the acts charged. On cross-examination, O'Gara disagreed with the proposition that a defendant's amnesia as to the events of the crime would not, in and of itself, render him unfit.

¶ 20 On May 24, 2011, the trial court entered an order which, in its entirety, stated: "The Defendant, TERRIS E. STAHL, is unfit to stand trial and is unlikely to become fit to stand trial within one year." The State filed a motion to reconsider, arguing defendant's amnesia, by itself, did not support a finding that he is unfit to stand trial and that "the defendant is fit to stand trial because he understands the nature and purpose of the proceedings against him, and he can assist in his own defense." At the hearing on the motion, defense counsel reiterated that, at the fitness hearing, in addition to all three psychiatrists agreeing that defendant had "physical amnesia" of the events, there was evidence that defendant could not assist counsel at trial due to his short-term memory deficits. Thereafter, the State's motion to reconsider was denied.

¶ 21 The State then appealed, arguing that the trial court's ruling that defendant remained unfit to stand trial was against the manifest weight of the evidence because a defendant's amnesia related to the events surrounding the charges against him is not sufficient to support a finding of unfitness. The appellate court disagreed and affirmed. 2013 IL App (5th) 110385, ¶¶ 19, 33. For the purposes of appeal, the panel "assume[d]" that defendant's short-term memory impairment could be accommodated adequately, and focusing its discussion on whether defendant's inability to recall the events at issue made him unfit to stand trial, the court concluded that it did. *Id.* ¶ 21.

¶ 22 The State argues that: (1) amnesia as to the events surrounding the crime does not *per se* render defendant unfit to stand trial; and (2) under the totality of the circumstances, defendant is fit to stand trial. Defendant responds that: (1) the appellate court did not hold that his amnesia *per se* renders him unfit to stand trial; and (2) the trial court's finding that he remained unfit to stand trial was not against the manifest weight of the evidence.

¶ 23                                                    ANALYSIS

¶ 24 It is well-settled that " 'the criminal trial of an incompetent defendant violates due process.' " *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996) (quoting *Medina v. California*, 505 U.S. 437, 453 (1992)); accord *People v. Haynes*, 174 Ill. 2d 204, 226 (1996). The federal constitutional test for incompetence is also well-settled. "A defendant may not be put to trial unless he ' "has sufficient present ability to consult with his lawyer with a reasonable degree of

rational understanding ... [and] a rational as well as factual understanding of the proceedings against him." ' " *Cooper*, 517 U.S. at 354 (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960) (*per curiam*)).

¶ 25    The primary issue in this case is whether, under article 104 of the Code, defendant's amnesia as to the events surrounding the crime alone renders him *per se* unfit to stand trial, as the appellate court held. This issue of statutory construction is a question of law that is reviewed *de novo*. *Home Star Bank & Financial Services v. Emergency Care & Health Organization, Ltd.*, 2014 IL 115526, ¶ 22. If we do not find that such amnesia renders defendant *per se* unfit to stand trial, then we must determine whether the circuit court's finding of unfitness is against the manifest weight of the evidence.

¶ 26    Under article 104, "[a] defendant is presumed to be fit to stand trial." 725 ILCS 5/104-10 (West 2010). "A defendant is unfit if, because of his mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense." *Id.* "When a bona fide doubt of the defendant's fitness has been raised, the burden of proving that the defendant is fit by a preponderance of the evidence and the burden of going forward with the evidence are on the State." 725 ILCS 5/104-11(c) (West 2010). Matters that are admissible on the issue of the defendant's fitness include, but are not limited to:

> "(1) The defendant's knowledge and understanding of the charge, the proceedings, the consequences of a plea, judgment or sentence, and the functions of the participants in the trial process;
>
> (2) The defendant's ability to observe, recollect and relate occurrences, especially those concerning the incidents alleged, and to communicate with counsel; [and]
>
> (3) The defendant's social behavior and abilities; orientation as to time and place; recognition of persons, places and things; and performance of motor processes." 725 ILCS 5/104-16(b) (West 2010).

Ultimately, fitness must be judged based on the totality of the circumstances. See *People v. Kinkead*, 182 Ill. 2d 316, 340 (1998) (our case law demonstrates the inherent difficulties in attempting to apply a bright-line rule of law to specific factual circumstances involving defendants' fitness to stand trial; the case-by-case approach comports with due process and does not impose an unduly restrictive burden on the State); *People v. Clay*, 361 Ill. App. 3d 310, 331 (2005).

¶ 27    The issue of whether a defendant's amnesia as to the events surrounding the crime *per se* renders him unfit to stand trial is one of first impression before this court. However, this issue has been addressed by several districts of our appellate court and many federal courts. These courts have concluded, almost without exception, that amnesia as to the events surrounding the charges against a defendant does not *per se* render him unfit to stand trial. See, *e.g.*, *People v. Thomas*, 246 Ill. App. 3d 708, 712 (1993) ("[T]he inability to recollect the events of the day of the offense due to amnesia does not, by itself, warrant the conclusion that the defendant was unfit."). As stated in *People v. Schwartz*, 135 Ill. App. 3d 629, 638-39 (1985):

> "[T]he psychiatric evidence at the pretrial fitness hearing was that although defendant was suffering from *** amnesia as to what occurred on the day of the offenses with

which he was charged, defendant was entirely lucid on what his lawyer was trying to do for him, understood the proceedings against him, and could effectively communicate with his lawyer and make trial decisions, except he could not cooperate in his defense concerning the amnesiac period. We believe from this evidence that defendant was able to understand the nature and purpose of the proceeding against him and to assist in his defense, as contemplated under our statute, and his inability to recollect the events on the day of the offenses due to his amnesia does not, by itself, warrant a contrary conclusion."

¶ 28     Similar holdings are found in the federal courts which have examined this issue. In *United States v. Villegas*, 899 F.2d 1324, 1341 (2d Cir. 1990), *cert denied*, 498 U.S. 991 (1990), the court flatly stated: "A defendant's amnesia about events surrounding the crime will not automatically render him incompetent to stand trial." See also *United States ex rel. Parson v. Anderson*, 481 F.2d 94, 96 (3d Cir. 1973) (*per curiam*) ("the fact that the defendant suffered amnesia as to the commission of the crime, does not, in and of itself, render the defendant incompetent to stand trial"), *cert. denied*, 414 U.S. 1072 (1973); *United States v. Mota*, 598 F.2d 995, 998 (5th Cir. 1979) ("amnesia does not constitute incompetency per se to stand trial"), *cert. denied*, 444 U.S. 1084 (1980); *United States v. Andrews*, 469 F.3d 1113, 1118-19 (7th Cir. 2006) ("amnesia alone does not render a defendant incompetent to stand trial"); *Leach v. Kolb*, 911 F.2d 1249, 1260-61 (7th Cir. 1990) (" '[A]mnesia is not a bar to prosecution of an otherwise competent defendant.' " (quoting *United States v. Stevens*, 461 F.2d 317, 320 (7th Cir. 1972))), *cert. denied*, 498 U.S. 972 (1990); *Davis v. Wyrick*, 766 F.2d 1197, 1202 (8th Cir. 1985), *cert. denied*, 475 U.S. 1020 (1986) (same).[1]

¶ 29     The defendant in *Schwartz*, 135 Ill. App. 3d at 632, like defendant here, suffered a self-inflicted gunshot wound and claimed he was unable to remember the events involved in the charges against him. At a hearing to determine his fitness to stand trial, a psychiatrist testified that the defendant could not recall the events of the day of the offenses but could understand the nature and purpose of the proceedings and communicate with his attorney. *Id.* After concluding that there was no authority holding a defendant incompetent to stand trial solely on the basis of amnesia, the trial court found the defendant fit to stand trial. *Id.*

¶ 30     On appeal, the defendant in *Schwartz* argued that the trial court erred in concluding, after a pretrial fitness hearing, that his amnesia did not render him unfit to stand trial. *Id.* at 636-37. The State, in response, argued that the defendant was fit to stand trial because the evidence adduced at the fitness hearing showed that, even though he had amnesia, he was able to understand the nature and purpose of the proceedings against him and to assist counsel in his defense. *Id.* at 637. In *Schwartz*, the panel concluded that the trial court correctly found the defendant fit to stand trial where he was able to understand the nature and purpose of the proceedings against him and to assist in his defense and that his inability to remember the

---

[1]Further support for this conclusion can be found in Jonathan M. Purver, Annotation, *Amnesia as Affecting Capacity to Commit Crime or Stand Trial*, 46 A.L.R.3d 544, § 4 (1972).

events at the time of the offenses due to his amnesia did not, by itself, warrant a contrary conclusion. *Id.* at 639.

¶ 31    The defendant in *Schwartz* also raised a due process argument. *Id.* More specifically, he argued that his amnesia precluded him from presenting the only possible evidence of his state of mind at the time of the offenses—his own testimony. *Id.* He argued that the lack of his own testimony about his state of mind substantially impaired his ability to effectively present his insanity defense and therefore deprived him of a fair trial. *Id.* at 640.

¶ 32    The *Schwartz* court found that the defendant's amnesia as to the events at the time of the offenses did not substantially impair his ability to effectively present his insanity defense because: (1) the defendant was able to effectively communicate with his attorney and provide him with all the factual information pertinent to the presentation of his insanity defense, except for the brief amnesiac period; (2) he took the stand in his own defense and gave accurate and detailed testimony about the stressful events preceding his amnesiac period; (3) he presented testimony of other witnesses corroborating these stressful events, which also supported his insanity defense; and (4) he presented testimony of mental health experts to support his insanity defense. *Id.* Under these circumstances, the court in *Schwartz* found that the defendant was able to fully develop and effectively present his insanity defense. *Id.* Thus, the court concluded that the lack of the defendant's own testimony as to his state of mind at the time of the offenses did not deprive him of a fair trial. *Id.*

¶ 33    In the present case, the Appellate Court, Fifth District disagreed with the reasoning of the First District in *Schwartz*, stating:

> "We believe the *Schwartz* court ignored express statutory language applicable to fitness hearings. *** [T]he statute expressly provides that the court should consider the defendant's ability to recall the events involved in the charges against him and relate those to defense counsel. Indeed, the statute emphasizes the defendant's ability to relate these events. 725 ILCS 5/104-16(b)(2) (West 2010). We thus decline to follow *Schwartz*." 2013 IL App (5th) 110385, ¶ 26.

The appellate court herein further distinguished *Schwartz*, stating:

> "It is also important to note that, while the *Schwartz* court held that complete amnesia of the events surrounding the charged behavior does not automatically support a finding of unfitness, the court did *not* hold that a defendant who lacks any memory of the events at issue may *never* be found unfit on this basis alone. In that regard, the instant case is distinguishable from *Schwartz*. In *Schwartz*, the defendant was able to provide his attorney with information about the events leading up to the charged incident that helped him present his insanity defense. Here, the defendant is unable to recall anything that occurred in the 48 hours leading up to the events at issue, and there is no indication that an insanity defense would be appropriate or that the defendant can provide his attorney with any information that will help him to present any other defense." (Emphases in original.) *Id.* ¶ 27.

¶ 34    In rejecting the State's argument herein that defendant could, in fact, assist in his own defense because he was able to review police reports and discuss witness testimony with his attorney, the appellate court stated:

"We are not persuaded. The defendant here is unable to provide counsel with any information at all concerning the events at issue. This is far more critical aid to a defense attorney than the ability to read police reports and assess witness testimony. The defendant's recollection of the events at issue is information the attorney has no other means of obtaining. Thus, the fact that the defendant may be able to discuss aspects of the trial with his attorney does not override the fact that he is unable to provide his attorney with any information concerning the crimes charged." *Id.* ¶ 29.

This statement seems to suggest that, under the Code, amnesia as to the events surrounding the crime will *always* render a defendant unfit to stand trial because he or she will be unable to provide defense counsel with any information concerning the crimes charged. We disagree.

¶ 35    Ultimately, fitness must be judged based on the totality of the circumstances. See *People v. Kinkead*, 182 Ill. 2d 316, 340 (1998) (our case law demonstrates the inherent difficulties in attempting to apply a bright-line rule of law to specific factual circumstances involving defendants' fitness to stand trial; the case-by-case approach comports with due process and does not impose an unduly restrictive burden on the State); *People v. Clay*, 361 Ill. App. 3d 310, 331 (2005).[2] As earlier stated, under article 104, matters that are admissible on the issue of a defendant's fitness include, *but are not limited to*:

"(1) The defendant's knowledge and understanding of the charge, the proceedings, the consequences of a plea, judgment or sentence, and the functions of the participants in the trial process; [and]

(2) The defendant's ability to observe, recollect and relate occurrences, especially those concerning the incidents alleged, and to communicate with counsel[.]" 725 ILCS 5/104-16(b) (West 2010).[3]

¶ 36    As to subsection 104-16(b)(1), the evidence before this court shows potential problems with the factors therein, where Dr. Gilbert found that, despite defendant's awareness of the charges against him and the potential for long-term punishment if convicted, he lacked "an appreciation of the seriousness of the potential consequences for his life." Dr. Rabun concluded that defendant lacked the capacity to understand the nature of the proceedings against him, and Dr. Montani, while believing defendant understood the nature and purpose of

[2]We note that, at oral argument before this court, counsel for both the State and defendant agreed, *inter alia*, that the trial court must consider the totality of the circumstances in determining whether a defendant is fit to stand trial.

[3]Although the statute mentions a defendant's inability to recall the incident as a matter "especially" admissible on the issue of fitness, a court must consider all the factors listed, and all others presented in order to determine fitness. See 725 ILCS 5/104-16(b) (West 2010).

the proceedings against him, acknowledged that defendant was in the bottom 1% in his ability to recall new information after 20 to 30 minutes.

¶ 37 Next, as to subsection 104-16(b)(2), the evidence predominantly reflects that defendant cannot satisfy either fitness concern identified. Dr. Gilbert found defendant unfit to stand trial because of his inability to: (1) recall the events of the day in question; and (2) cooperate with his attorney because defendant's short-term memory impairment made it impossible for him to, *inter alia*, "track what happened in court from one day to the next." Dr. Rabun concluded that defendant was unfit to stand trial, as he had no memory of the day of the events charged and had "significant deficits in his capacity to learn and retain information." We believe this latter finding relates to defendant's ability to communicate with counsel, as Dr. Rabun also noted that if defendant's amnesia were his only impairment, he would be fit to stand trial.

¶ 38 Further, while it was Dr. Montani's opinion that defendant's difficulties in forming new memories did not prevent him from assisting in his defense, expert witness O'Gara, a criminal defense attorney, described how defendant's amnesia as to the relevant events could negatively impact his ability to assist defense counsel. O'Gara explained that: (1) defendant could not tell counsel his version of the events or what his state of mind was at the time, information that is critical to understanding what defenses might be available; (2) he could not meaningfully testify in his own defense because he could not remember the events at issue; and (3) he could not even intelligently decide how to plead because he did not know whether he committed any of the acts charged.

¶ 39 Thus, we find there are a number of factors, including defendant's inability to communicate with counsel because he cannot recollect his actions and *mens rea* surrounding the incident, and his inability to adequately communicate and assist counsel due to his near complete loss of short-term memory, that should be considered on the issue of fitness. Accordingly, under article 104 of the Code, amnesia as to the events surrounding the crime does not *per se* render a defendant unfit to stand trial. Rather, the fact that a defendant cannot recollect the incident at issue is just one of the circumstances that may be considered in determining a defendant's fitness. See 725 ILCS 5/104-16(b)(2) (West 2010). We therefore hold that a court must consider the totality of the circumstances to determine whether a defendant is fit to stand trial. See *Kinkead*, 182 Ill. 2d at 340.

¶ 40 We turn then to the issue of whether, under the totality of the circumstances in this case, the trial court's finding that defendant remained unfit to stand trial was against the manifest weight of the evidence. See *Haynes*, 174 Ill. 2d at 226 (a trial court's ruling on the issue of fitness to stand trial will be reversed only if it is against the manifest weight of the evidence). All three psychiatric experts concluded that defendant had no recollection of the events leading to the charges against him, or of what occurred up to 48 hours prior to those events. Further, two of the three psychiatrists concluded that defendant's short-term memory was substantially impaired and would affect his ability to assist in his own defense. The third, although believing steps could be taken at trial to compensate for defendant's short-term memory deficits, acknowledged that defendant ranked in the lowest one percentile with regard to short-term memory retention after 20 to 30 minutes. Therefore, based on the totality of the circumstances,

we cannot say that the trial court's finding that defendant remained unfit to stand trial was against the manifest weight of the evidence.

¶ 41                                      CONCLUSION

¶ 42        For the foregoing reasons, we affirm the judgment of the appellate court, which affirmed the trial court's finding that defendant remained unfit to stand trial.

¶ 43        Affirmed.