(No. 42007.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
RICHARD A. JOHNSON, Appellant.

*Opinion filed March 24, 1970.*

GERALD W. GETTY, Public Defender, and BLOCK, ERDOS & LUPEL, both of Chicago, (GEORGE L. LINCOLN, JAMES J. DOHERTY, WARREN LUPEL, and JOEL J. KRUGER, of counsel,) for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (JAMES B. ZAGEL, Assistant Attorney General, and ELMER C. KISSANE and ARTHUR BELKIND, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE CREBS delivered the opinion of the court:

Richard A. Johnson was tried in the circuit court of Cook County and found guilty in a jury trial of the crime of armed robbery and sentenced to the penitentiary for a period of three to eight years. He has appealed directly to this court, alleging, among other things, that he was denied his constitutional rights to a speedy trial, to due process and the effective assistance of counsel.

Defendant, together with two co-defendants, was indicted for three separate robberies under three separate indictments numbered 68-2088, 68-2089 and 68-2090. The State elected to proceed first with indictment 68-2090, and then later, because of the death of the complaining witness in that case, trial proceeded on indictment 68-2088 which is the case now before us. We shall first consider defendant's contention relative to a denial of a speedy trial.

Defendant was arrested in Wisconsin and brought back to Illinois on April 12, 1968, and the application of the four-term statute (Ill. Rev. Stat. 1967, ch. 38, par. 103—5) depends upon whether defendant requested or agreed to a continuance granted on July 22. If he did, then the trial, started on October 9, 1968, was within the four-month period and the statute is not applicable.

Prior to July 22 defendant was represented by a private attorney and a number of continuances were entered on motion of the State or upon order of the court because of difficulties concerning the appearance of one of the defendants who was a minor. On July 22 at a hearing attended by defendant and his attorney and one of the co-defendants and his attorney, who was the Public Defender, defendant's private attorney requested and was granted leave to withdraw. The following colloquy then occurred between the court and the defendant:

"COURT: I will have to give you time to obtain another attorney. Are you going to have a private attorney?

DEFENDANT: I'd like a bar association attorney.

COURT: Can you afford a private attorney?

DEFENDANT: No, sir, a bar association lawyer, if its possible?

COURT: I'll appoint the Public Defender if you can't afford a lawyer. Do you have the means to pay for a lawyer?

DEFENDANT: I don't believe so, Your Honor.

COURT: I will appoint the Public Defender. Are you ready for trial on this?"

The last question was directed to the Public Defender who was representing the other two defendants and he replied that he would not then be ready for trial, that though he had had some discussion on it he hadn't gone into all the facts. The defendant then addressed the court about some matters in the county jail and the court directed him to talk to his attorney. Defendant replied that he did not have an attorney now and the court told him that his lawyer (the Public Defender) was right here. The court then gave the Public Defender two weeks to prepare for trial and showed the motion for continuance to be by defendant for two weeks until August 5. No objection or exception whatsoever was made to this announcement.

At the hearing on August 5 defendant asked the court

if he could get a bar association attorney because the Public Defender had nine cases already and had no time to handle his case. From the record this question was not answered as the court was involved in a jury trial and the matter was continued by order of court until August 14. On this latter date defendant addressed the court stating that on July 22 the court had appointed the Public Defender to represent him against his objection and that the Public Defender had asked for a continuance against his objection, and therefore he, *pro se,* was filing a petition for discharge under the "Fourth Term Act." On September 10, after hearing and presentation of the transcript of the July 22 hearing, this petition was dismissed.

There is no question that if defendant did not request or agree to the continuance on July 22 the four-month limitation would be applicable here. But we cannot agree that defendant did not request or acquiesce in such continuance. As is clearly apparent from the colloquy above quoted, after defendant's private counsel withdrew he had no attorney and he was not ready for trial. He mentioned a preference for a bar association attorney, but he did not object nor remonstrate in any way when the court appointed the Public Defender who was already familiar with the pending indictments. It is not error for a court on its own motion to appoint an attorney for one accused with a crime unless it is done over his objection and some exception is taken to the court's action at the time. (*People* v. *Ephraim,* 411 Ill. 118.) Nor did defendant object to the continuance which was granted on his behalf and which he would have needed whether a bar association attorney or the Public Defender had been appointed. It was not until August 14, after the running of the four-month period, that defendant for the first time made any disclaimer as to the continuance granted for his benefit on July 22. We hold that defendant both accepted the appointment of the Public Defender at the time it was made and also consented to and acquiesced in the re-

quest of his said attorney for a continuance. We think it clear, as in *People* v. *Rankins,* 18 Ill.2d 260, that defendant's belated dissatisfaction with his counsel and objection to his appointment were made solely to avoid the continuance previously granted; that regardless of his subsequently expressed dissatisfaction he was bound by the acts of his counsel at the time, and that the delay occasioned on that date was effective to suspend the running of the four-month limitation. An accused may not fully avail himself of the services of appointed counsel and then, later, disclaim both the services and the appointment when it appears to his advantage, for to permit such a disclaimer would cause undue delay and greatly embarrass the effective prosecution of crime. *People* v. *Rankins,* 18 Ill.2d 260.

Defendant's next contention is that he was coerced into trial in the present case without adequate time to prepare and as a result he was denied due process and effective assistance of counsel. All three indictments had been set for trial but only 68-2090 had been set with subpoenas. Two days before trial date defense counsel called to inquire which case the State intended to try. He was told that it would be 68-2090, but later in the day the State learned that the prosecution witness in that case had died. Defense counsel was immediately called to apprise him of this fact, but he was not in his office and his secretary took the message. At trial time, on October 7, the State elected to proceed in the subject case to which defendant objected. Both the State and the court recognized that defendant might want additional time to prepare and the court twice offered to grant defendant a continuance stating that he would not force defendant to trial if he were not ready. Defendant was reluctant to take a continuance on his own motion, but when again told by the court that if he were ready the trial would proceed and, if not, he could have a continuance, counsel asked for and was granted a recess to talk to the defendant. Thereafter counsel proceeded on his motion to suppress

identification testimony without any further discussion of a continuance or any objection to proceeding with the case. After extensive testimony the motion was denied and the case continued until the next day, October 8, when it was held on call until the following day, October 9, when trial began.

We agree that one accused of a crime is entitled to sufficient time for preparation of his defense and that to be precipitously forced into trial without an opportunity to prepare would constitute a violation of his fundamental rights. But on the basis of the above facts there is no evidence of coercion or force of any kind. Due to circumstances beyond the control of anyone, death of the prosecution witness in indictment 68-2090, defendant was given the privilege of going to trial on the subject case or taking a continuance for purpose of further preparation if needed. After consultation between defendant and his attorney the choice was made to proceed on this case. There then ensued a full day's hearing on the motion to suppress identification during which counsel exhibited a thorough knowledge and grasp of all the details of the case. Another full day passed before trial commenced on October 9. Even had the court refused a specific request for a continuance by defendant he would have had difficulty proving that such refusal embarrassed him in his defense or prejudiced his rights as is required under such circumstances. (*People* v. *Surgeon*, 15 Ill.2d 236; *People* v. *Kunowski*, 360 Ill. 416.) As it was he was given the full co-operation of the court; he was offered such time as he thought he might need. To argue that he was forced to choose as he did is to argue technicalities. The right to a speedy trial and the right to avoid a precipitous trial are separate but related rights. Both are designed to assure an accused a fair trial, to prevent undue delay in one instance and undue haste in the other. He can demand action or avoid action as the exigencies of his situation may dictate. But fairness and justice are not a one-way street. So-

ciety is likewise entitled to a fair administration of justice and the measure of right and wrong must always be that which is fair, not that which is technically astute or contrived. The fact that on occasion the accused might have to jeopardize the legislative benefits of the four-month rule by asserting his right to a continuance does not entail a denial of his right to a speedy trial. In fact, in this case the application of the four-month statute was not critical at this point for it had considerable time still to run from August 5, the date to which the case had been continued on defendant's motion of July 22. The election was defendant's to determine on the basis of what would better ensure him a fair trial, and, having chosen to proceed, his present argument is nothing more than technical obfuscation. We find that this record does not show a denial of defendant's constitutional rights, but rather indicates a studied effort by defendant to induce technical error. See *People* v. *Denham*, 33 Ill.2d 599.

With respect to the trial itself defendant contends that he was denied the right to confront the witnesses against him, that identification by one witness was procured by such unnecessarily suggestive procedure as to deny him due process of law, and that he was denied assistance of counsel when the court permitted defendant to make his own final argument in place of his attorney.

In the early morning hours of March 17, 1969, Tony Volpendisto's tavern in Chicago was robbed by three armed men. The owner testified that from his upstairs apartment he heard a noise which caused him to go down to the tavern to investigate. Entering from a rear door he saw a number of patrons lying on the floor, and one robber behind the bar at the cash register, and another immediately to his left. The man on his left started cursing him and the man at the cash register turned around, cursed him, and pulled the trigger on his gun three or four times but the gun did not go off. At the time this man was four or five feet way and Tony

Volpendisto stated that in light good enough to read a newspaper at the bar he observed this man for about ten seconds. He also observed the man on his left before this man hit him with his gun. Another witness, Jimmie Kostuck, stated that he was about to play pool when two men came yelling that this was a robbery and that one came up to him, cursed him, and ordered him to get down on the floor or he would blow his head off. The lighting was good from the light over the pool table.

Two or three days later the tavern proprietor remembered that one of the robbers inquired about the name of a local drunk and, thinking that if they knew this man, maybe they were local too, he went to the police station to ask to see police bulletins on any wanted men in the neighborhood. He was shown six or seven bulletins from which he picked out the defendant here. Two weeks later detective Cozzi showed Tony Volpendisto twenty or twenty-five pictures in color, all white males of approximately the same age as defendant, and he again picked out defendant. In court Tony Volpendisto positively identified defendant and stated categorically that his identification was based on what he saw the night of the robbery and not on the bulletins or the pictures. Witness Jimmie Kostuck also picked defendant's picture out of the pictures later shown to him by Officer Cozzi and stated that he too based his identification on what he saw at the tavern. He also stated that he had seen the black and white bulletin of defendant but was not sure who showed it to him. Officer Cozzi denied showing Kostuck the bulletin.

Defendant argues that Kostuck's identification was unfairly induced by police suggestion and violated the constitutional rights of defendant, citing *Stovall* v. *Denno,* 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967. We do not agree. In *People* v. *Nelson,* 40 Ill.2d 146, we held that *Stovall* requires that a defendant so claiming must prove that the confrontation conducted was so unnecessarily suggestive and conductive to irreparable mistaken identification that he

was denied due process of law. Kostuck was not sure who showed him the bulletin but he was positive that Officer Cozzi said nothing to indicate or suggest which picture he was to identify and that he was positive that his identification was based on what he saw that night at the tavern. Under these circumstances we find that Kostuck's identification was admissible, that it was based on observation independent of and uninfluenced by any improper identification procedure, and that its weight and credibility was for the jury to determine. *People* v. *Crenshaw,* 15 Ill.2d 458.

Defendant next contends that the State unfairly questioned Kostuck so as to make it clear to the jury that his wife, who did not appear as a witness, had also identified defendant's photograph, and that defendant was thereby denied the right to confront the witnesses against him. At the hearing on the motion to suppress identification Mr. Kostuck did state that Mrs. Kostuck had also identified defendant from the pictures. However, at the trial no such statements were made. The State merely elicited information from Kostuck explaining the absence of Mrs. Kostuck from attendance at the trial because she had just had a baby and was confined to her home. This the State had a right to do to rebut the inference that the testimony of the uncalled witness is presumed to be adverse to the State's case. *People* v. *Guido,* 25 Ill.2d 204.

Finally, defendant contends that he was denied effective assistance of counsel when the court permitted him to make his final argument to the jury but refused to allow his attorney to supplement that argument. After the conference on instructions the defendant asked for permission to file a motion *pro se* to reopen his case, expressing dissatisfaction with his attorney and the manner in which he had handled his case. In addition, defendant orally requested permission to make the final argument himself. His counsel objected strenuously stating that since he had tried the case he expected to argue it, but that if the defendant wanted to waive

his right to counsel and argue his own case that was his prerogative. The court then asked defendant if he was asking "permission to argue with your counsel or to make the argument yourself". Defendant replied that it was "to make the argument myself and use my counsel as advisor". Seeking further clarification, the court then asked if defendant meant that he wanted to make his own argument and the attorney not to make an argument. Defendant replied in the affirmative. After further argument by counsel that he and not defendant should be allowed to argue to the jury, the court again verified with defendant that he wanted to make his own argument. With this express understanding that defendant wished to make his own argument and substitute his argument for his attorney's argument, permission was granted. On conclusion of the argument counsel again requested to make an additional argument but was refused.

From this defendant now contends that the court erred in not allowing dual arguments to be made, citing foreign jurisdictions to the effect that dividing argument between two speakers is common. But that is not the point here. The defendant demanded the right to defend himself alone insofar as the final argument was concerned. It was determined through the patient questioning of the court that defendant did not want any assistance from his counsel other than as an advisor, that he specifically did not want an argument by his attorney, and again that he intended his argument to be a substitute for any argument by his attorney. Recognizing the principle that defendant's right to defend himself is as fundamental as his right to be defended by counsel (*People* v. *Bush*, 32 Ill.2d 484), the court exercised its discretion even at this late stage of the proceeding and acceded to defendant's request. But he did so only after satisfying himself that defendant fully understood the nature of his request and that defendant appeared to have sufficient intelligence and capacity to perform the task he had chosen. And it might be mentioned that the record reveals that de-

fendant did a most creditable job. In our opinion the court exercised great zeal in explaining and protecting the rights of defendant, and to accuse him of dereliction now is a travesty. It would take little imagination to reconstruct defendant's contentions had counsel been "forced" upon him by allowing him to make an additional argument. He would then have sought reversal because he had not been given the exclusive right to make his own final argument. As stated in *People* v. *Richardson,* 17 Ill.2d 253, a defendant who elects to conduct his own defense assumes the responsibility of his decision and to hold otherwise would make a mockery of the judicial process, since a defendant could elect to defend himself and then secure a reversal because of his own incompetency. We find that the trial court did not abuse its discretion in refusing to permit defense counsel additional argument.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*