2019 IL App (1st) 162698-U

No. 1-16-2698

Order filed November 21, 2019

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 5822 |
| | ) | |
| LEROY ROBINSON, | ) | Honorable |
| | ) | Vincent M. Gaughan, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BURKE delivered the judgment of the court.
Presiding Justice Gordon and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1     *Held*: We affirm defendant's conviction, concluding the trial court did not err (1) in honoring defendant's speedy-trial demand over his counsel's objection, and (2) failing to hold a fitness hearing.

¶ 2     Following a bench trial, the trial court found defendant guilty of two counts of aggravated battery of a correctional institution employee, sentenced him to concurrent four-and-a-half-year prison terms, and assessed various fines and fees. Defendant appeals, arguing the trial court (1) erroneously honored defendant's speedy-trial demand over his counsel's objection, which forced

his counsel to try the case unprepared; and (2) violated his right to due process by failing to conduct a fitness hearing.[1] We affirm.

¶ 3    The State charged defendant by indictment with two counts of aggravated battery of a correctional institutional employee (720 ILCS 5/12-3.05(d)(4)(i) (West 2016)), alleging that on August 13, 2015, defendant spat on Officers Charles Moore and Reinaldo Rodriguez while the officers were performing their official duties as employees of a correctional institution. Because the pretrial and posttrial proceedings are at issue, we recount them in detail.

¶ 4    At defendant's April 28, 2016, arraignment, the trial court ordered defendant to undergo a behavioral clinical examination (BCX) to assess defendant's fitness to stand trial with and without medication, his sanity at the time of the offense, and his ability to understand his *Miranda* rights. The transcript from defendant's arraignment does not indicate what prompted the court to order the BCX. The court continued the matter to June 7, 2016, for status on the BCX report.

¶ 5    On June 7, 2016, defendant's attorney informed the trial court the BCX had not been completed because the examiners had not yet received certain records relating to defendant, and the State informed the court it had completed discovery. Defendant then asked to address the court and, after cautioning defendant about the risks of doing so, the court allowed defendant to speak.

¶ 6    Defendant told the court he did not feel his attorney was appropriately representing him because his attorney was "doing things that [he did not] approve of," and he informed the court

---

[1] Defendant also challenged, for the first time on appeal, the fines, fees, and costs imposed by the court, but withdrew his challenge in his reply brief. See Ill. S. Ct. R. 472(e) (eff. May 17, 2019) (reviewing court must remand matter to the trial court where fines, fees, and costs are challenged for the first time on appeal).

he wanted a different lawyer to represent him. Additionally, defendant informed the court he wanted "to set it for a speedy trial and ask for a bond reduction [or] house arrest."

¶ 7    After cautioning defendant that a speedy-trial demand would result in the State being excused from turning over any additional discovery, the trial court asked defendant if he was ready for trial that day. Defendant responded in the affirmative, adding that he wanted a jury trial. Defense counsel informed the court he was not ready for trial as he had "just received discovery today which did include a video that [he] need[ed] to watch."

¶ 8    The trial court asked the State how many days into the 120-day speedy-trial term the proceedings were, and the State responded "approximately 42 days." Defense counsel stated, "[w]e still haven't even found out whether my client is fit to stand trial at this point pursuant to the more records that the [BCX examiners] received. I don't know if my client is fit at this point." In response, the trial court stated, "that means you're in doubt, and he's presumed to be fit. So I don't see any overwhelming evidence or any evidence saying that he's not. He's very articulate." Defendant interjected that he was his "own payee for [his] Social Security benefits," and the following colloquy occurred:

> "THE COURT: Pardon?
>
> [Defendant]: Sorry about that, [Y]our Honor.
>
> THE COURT: Go ahead. You what?
>
> [Defendant]: Sorry about that. I'm my own payee for my Social Security benefits. This is a recurrent incident with my mother. The last case that I'm on parole for, they found me guilty on a case – it's a long story, and we'll be here all day talking about it, but

I'm going to have some things done and it's in the process right now; but I just don't feel at a good – I don't feel that this lawyer is representing me right.

THE COURT: He is. Listen. All right, you know, that's one of the things that, you know, me and you are disagreeing upon because I've seen the way he's performed. I've seen his legal motions and everything, and he is way above the average private attorney. All right? So he's up the upper echelon. So, I mean –

All right, how long is this [video]?

[Assistant State's Attorney]: I think it's about a half an hour, [Y]our Honor.

THE COURT: All right, so you can certainly see that within 78 days.

[Defendant]: He told me he already looked at it. He told my mother that.

[Defense counsel]: I did not, Judge.

THE COURT: When did you get the video?

[Defense counsel]: I just received it today, Judge.

THE COURT: Then how could he look at it?

[Defendant]: He said it's two –

THE COURT: Listen to me.

[Defendant]: I'm sorry, Judge.

THE COURT: How could he look at it if he just got it today? All right? That's where you're getting a little confused about what's going on, and you're not starting to make sense to me either."

Defendant responded his attorney told him at the last court date, over the phone, and told his mother that he had watched the tapes, and "if they rewind the camera, it will show that he said that he looked at the tapes already and it showed such and such and such and such."

¶ 9    After the trial court confirmed defense counsel had received the video that day, defendant interjected that he had turned this case (and an unrelated case) over to the Cook County Sheriff Office of Professional Review (OPR), and the cases were closed in his favor. The following colloquy then occurred:

> "THE COURT: So you're not charged?
>
> [Defendant]: Yeah, I'm charged with the crime.
>
> THE COURT: Then how could it be closed in your favor?
>
> [Defendant] Because when I came – I went home –
>
> THE COURT: No, listen to me.
>
> [Defendant]: Okay, yes, sir.
>
> THE COURT: See your logic is starting to – now I'm starting to understand that there might be some problems right now. Your logic is not rational. If you were cleared, then how can you be charged?
>
> [Defendant] Because that's double jeopardy.
>
> THE COURT: Now you're starting to babble. All right? ***
>
> *** And so we're going to move on with the BCX."

The court noted defendant had demanded trial and continued the matter to June 21, 2016, attributing the continuance to the State.

¶ 10    The record contains a letter dated June 20, 2016, and filed the next day from a forensic psychiatrist to the trial court which includes the results of the BCX. In the letter, the forensic psychiatrist informed the court it was her opinion defendant was fit to stand trial. The letter indicated the basis for the forensic psychiatrist's opinion was that defendant was not currently prescribed any psychotropic medication and, while defendant "vocalize[d] some odd beliefs," he demonstrated he was cognizant of the charges, understood the nature and purpose of court proceedings, and showed the ability to cooperate with his attorney in his defense. Further, the forensic psychiatrist noted defendant was able to discuss the details of his case and the desired outcome in a rational and coherent manner which did not appear to be impacted by his psychiatric symptoms.

¶ 11    A psychiatric summary was attached to the letter, which indicated defendant accurately described the charges he faced, the name of his attorney, and the respective roles of the State, defense, and the court in criminal proceedings. Additionally, defendant accurately defined the terms witness, evidence, oath, and perjury, described the differences between a bench and jury trial, and accurately recalled his next court date. Defendant also discussed potential legal strategy as it pertained to his case and the reasoning behind the strategy he vocalized. The forensic psychiatrist found that throughout the evaluation, defendant "showed no evidence of inability to behave in a manner consistent with expected courtroom conduct" and "appeared able to testify relevantly and convey relevant information to his attorney."

¶ 12    At the status hearing on June 21, 2016, the court noted defendant had demanded trial, and the following colloquy occurred:

"[Defense counsel]: I know [defendant] demanded trial. As his [c]ounsel, I'm not in position to demand trial. I got a copy of the video the last date. I couldn't get it to play. The State was having trouble with the copy as well. We're looking at the original right now. I just got it queued up. I was going to show [defendant] the video. I'll ask for a date to file my answer.

THE COURT: He has a constitutional right. He's the boss. You are an employee.

[Defense counsel]: I do have some case law that I can present to [Y]our Honor to say, actually, the [d]efendant has a right to either demand a speedy trial or effective [c]ounsel. They don't have – But those are not mutually, well, they are kind of mutually exclusive in the sense that if I'm not prepared, he can demand trial and represent himself. But if I'm not prepared, there is an issue.

THE COURT: How long is this video?

[Defense counsel]: Half an hour. There are eight of them. Eight different camera angles. I was going over all eight of them, so I can show my client.

THE COURT: Have you talked to your client about this?

[Defense counsel]: I did talk to him before I started looking, saying that I had the video. I want to show it to him today. Is that correct?

[Defendant]: Right. That's what he said. But the thing is I want it set for trial. I know what's on the tape. They tried to suffocate me. I wrote grievances. It was sent to OPR.

\*\*\*

THE COURT: Listen, if it is a half an hour, you know, the thing is each video is not going to be dispositive of anything else. I mean it is nice, but to say there are four hours then?

[Assistant state's attorney]: Eight different cameras. At the same time.

THE COURT: If someone is choking [defendant] for half an hour, you don't think he would be dead by now?

[Defense counsel]: No, the incident is not a half hour each. Each block is a half hour, trying to queue up to see the different angles. There are eight different videos. About two of them I'm able to start. We're writing the times down. The only reason I didn't get this ahead of time, I couldn't get the video to work.

THE COURT: How many days are you into the term?

[Assistant state's attorney]: [83].

\*\*\*

THE COURT: All right. Get on it then. All right, are you persisting in your demand, answering ready?

[Defendant]: For trial?

THE COURT: Yes.

[Defendant]: For jury trial.

THE COURT: You understand you answer ready, that means you are done with discovery. They don't have to turn anything over to you.

[Defendant]: Uh-huh.

\*\*\*

[Defense counsel]: Just so I can make my record clear, defense [c]ounsel is not demanding trial. I will cite People vs. Carr –

THE COURT: Let me make my position clear, too. This has been on my call from April 28th. And you have not resolved this thing about the videos since then, all right. So, there are other things, more accurate than ineffective assistance of [c]ounsel other than you client demanding trial, all right. All right, I'll set this July 5th. Defendant demands trial. Motion State 7-5-2016. This is going to be a bench or jury?

[Defendant]: Jury."

During the hearing, neither the court, the State, nor defense counsel addressed the results of the BCX nor raised the issue of defendant's fitness to stand trial.

¶ 13    On July 5, 2016, defendant informed the court he wished to waive his right to a jury trial and proceed with a bench trial. Defendant's attorney stated that he had spoken with defendant several times about the proceedings and this was the first time he had heard defendant wanted a bench trial. Defendant's attorney told the court defendant was not on medication but had made statements counsel found alarming and made counsel question defendant's sanity and whether he should be on medication. The court asked counsel "what is your background in forensic psychiatry?" to which counsel replied he did not have a degree in forensic psychiatry. The court then stated defendant was acting "okay" in court. Defendant interjected, stating his attorney was "denying [his] rights," had failed to return his calls or talk to him, and refused his requests to see the video recordings of the incident. Defense counsel responded that he was going to show defendant the video that day but defendant had demanded trial against his advice.

¶ 14    The court admonished defendant regarding his right to jury trial and found he had knowingly and voluntarily waived his right. The State presented the testimony of Rodriguez and Moore and played surveillance video of the incident. The evidence established the following.

¶ 15    On August 13, 2015, defendant was incarcerated in the Cook County Department of Corrections and had been placed in the residential treatment unit, which is where inmates who have medical and psychiatric issues are placed so they can receive 24-hour care. At approximately 6 p.m., defendant was transported to the segregation unit where inmates are in their cells 23 hours per day, and he was received by three corrections officers, Moore, Rodriguez, and Officer Vejzovic.[2] Rodriguez gave defendant instructions to go into his assigned cell and explained the restrictions applicable to the segregation unit. When he told defendant to go to his cell, defendant became aggressive, pulling away from, yelling at, and cursing at the officers. As the officers attempted to regain control over defendant, he pulled away and sat on top of a table. Defendant then spat in Rodriguez and Moore's faces.

¶ 16    The trial court denied defendant's motion for a directed finding and admonished defendant regarding his right to testify in his defense. He elected not to do so. The court found defendant guilty of both charged offenses, ordered a presentence investigation report (PSI), and continued the matter for presentment of posttrial motions and sentencing.

¶ 17    Defendant filed a posttrial motion to vacate his conviction and for new trial, in which he argued, in pertinent part, the trial court erred by honoring defendant's speedy-trial demand over counsel's objection and despite counsel's concern relating to defendant's fitness to stand trial. The motion did not contend the court erroneously failed to hold a fitness hearing. The court

_____

[2] Officer Vejzovic's first name is not identified in the record.

treated defendant's motion as two separate motions, denied them both, and the matter proceeded to sentencing.

¶ 18    The PSI indicated defendant told the investigator he was diagnosed with schizophrenia in 2004 but was not prescribed medication at the time. He reported he was prescribed Risperdal, an antipsychotic medication, in 2005, which he took until 2010. Defendant was not prescribed medication for his condition since then and reported he did not feel the need to take psychotropic medication.

¶ 19    The record also includes a letter from defendant's mother to the trial court which was sent in anticipation of sentencing. The letter stated, in pertinent part, defendant was diagnosed as "paranoid schizophrenic" and "mentally retarded" by Dr. Massa.[3] After defendant was diagnosed, he was "put on Haldol injections" and began to function at a high level. The letter asked the court to place defendant in an institution that could provide him with adequate medication and treatment for his illness and, upon his release, to place him on "mental health parole."

¶ 20    During the sentencing portion of the August 2, 2016, hearing, defendant stated in allocution as follows:

> "I would like to address the [c]ourt and say that I never meant to harm anybody, the officers or anything like that. Sometimes my thinking is sporadic and I hear voices saying maybe that this person is trying to harm me and they're not. And that maybe I probably don't understand what's going on at the present time and then it probably catches up to me later, after I think about it.

---

[3] Dr. Massa's first name is not identified in the record.

"But I would just like to address the [c]ourt and tell [Your] Honor I'm not mad at you for the decision that you made. And State's [A]ttorney, thank you for coming to a compromise if it goes through and it doesn't I would just like to say thank you. And thank you, mom, thank you Leon for coming and supporting me and I appreciate everything from everyone."

The trial court then brought up the BCX which had been ordered at defendant's arraignment and asked defendant's attorney whether he had received a result, and the following colloquy occurred.

"[Defense counsel]: *** [I]t said he was fit to stand trial.

THE COURT: We don't have that?

[Defense counsel]: Do you want one?

THE COURT: I have it now, thank you.

[Defense counsel]: Okay, Judge. [Defendant] are you hearing these voices now?

[Defendant]: No, I'm not sir.

THE COURT: Since, before this trial began, did you hear these voices?

[Defendant]: No.

THE COURT: During the trial and when the trial began until now, have you heard any of these voices?

[Defendant]: No, Your Honor.

THE COURT: [Defense counsel], this wonderful letter from [defendant's] mother, did you send this up to the psychiatric institute?

[Defense counsel]: That letter was tendered to me today, Your Honor.

- 12 -

***

[Defense counsel]: But I did speak to them about his history prior to asking that he be evaluated.

THE COURT: I don't feel comfortable right now with the things that have been brought up. So what I'm going to do is enter and continue the sentencing. I want [BCX]."

The court continued the matter pending the results of the new BCX.

¶ 21 At the continued hearing, the trial court asked the State for the results of the second BCX, and the State told the court defendant was found fit to stand trial. In her letter to the court, the forensic psychiatrist informed the court defendant provided her with a "spontaneous, coherent, logical[,] and detailed report about the status of his case and the ultimate legal outcome." Defendant was cognizant of the charges, understood the nature and purpose of the court proceedings, and showed the ability to cooperate with his attorney "should he so choose."

¶ 22 The court indicated the hearing would go forward and asked defendant whether he wished to make any statements before sentencing. Defendant told the court he would "appreciate" whatever decision "you all make."

¶ 23 The trial court sentenced defendant to concurrent four-and-a-half-year prison terms on each offense and imposed various fines and fees. Defendant filed a motion to reconsider sentence, which the court denied. This appeal followed.

¶ 24 Defendant first contends the trial court erroneously honored defendant's speedy-trial demand despite his counsel's insistence that counsel was not ready to make such a demand. According to defendant, the decision to make a speedy-trial demand belongs uniquely to counsel. Defendant contends the court misapprehended the law where it told defense counsel defendant

was "the boss" and counsel was "the employee" and, as a result of the court's misapprehension, his attorney was forced to try the case unprepared, which denied defendant his right to a fair trial. We disagree.

¶ 25    We note the parties dispute the proper standard of review for this issue. Citing *Reliable Fire Equipment Company*, 2011 IL 111871, ¶ 13, defendant contends the trial court made an erroneous ruling of law and, therefore, our review is *de novo*. Citing *People v. Walker*, 232 Ill. 2d 113, 125 (2009), the State contends the grant or denial of a continuance is a matter left to the court's discretion, which should be reviewed for an abuse of that discretion. We need not resolve the parties' dispute, however, because under either standard, we find no error.

¶ 26    The United States and Illinois Constitutions afford criminal defendants the right to a speedy trial. U.S. Const., Amend. VI; Ill. Const., Art. I, section 8. Pursuant to this constitutional mandate, section 103-5 of the Code of Criminal Procedure generally provides that a criminal defendant must be brought to trial within 120 days from the date he or she was taken into custody. 725 ILCS 5/103-5 (West 2014).

¶ 27    The supreme court has recognized a defendant has the ultimate decision-making authority after consultation with his attorney with respect to (1) what plea to enter, (2) whether to waive a jury trial, (3) whether he will testify on his own behalf, (4) whether to submit a jury instruction on a lesser-included offense, and (5) whether to appeal. *People v. Wilmington*, 2013 IL 112938, ¶¶ 45-46. The ultimate decision-making authority with respect to matters of tactics and strategy, however, belongs to defense counsel after consultation with defendant. *People v. Ramey*, 152 Ill. 2d 41, 54 (1992). Such decisions include what witnesses will be called, whether and how to conduct cross-examination, what jurors to accept or strike, what trial motions should be made,

and the defense to be presented at trial. *Id.* Defendant argues the choice to make a speedy-trial demand is a strategic matter left to the attorney (see *e.g.*, *People v. Kaczmarek*, 207 Ill. 2d 288, 298 (2003)) and, therefore, the trial court should not have honored defendant's speedy-trial demand where counsel said he was not prepared for trial.

¶ 28    The supreme court rejected an argument similar to that raised by defendant here in *People v. Lewis*, 60 Ill. 2d 152 (1975). In *Lewis*, the defendant was arraigned on the 110th day after his arrest and the public defender was appointed. *Id.* at 154. The matter was set for trial on the 116th day of the 120-day speedy trial term and, on that date, the public defender advised the trial court he was not ready for trial due to the fact he had been assigned the case only six days earlier. *Id.* at 154-55. The defendant, however, against counsel's advice, persisted in demanding a speedy trial and answering ready, even after the trial court made two specific inquiries into whether defendant wished to persist in his demand despite his counsel's representations. *Id.* at 155. The trial court ordered the State to turn over any material to defense counsel which would have been tendered in discovery and the State complied. *Id.* Additionally, the trial court permitted defense counsel to consult with two of the State's witnesses, permitted another assistant public defender, who had represented the defendant at a preliminary hearing, to assist during trial, and permitted the defendant to file motions to quash arrest and suppress evidence. *Id.* The trial commenced the following day, the 117th day of the term, and defendant was found guilty. *Id.* at 155-56.

¶ 29    The supreme court rejected the defendant's argument he was denied due process of law as a result of being required to choose between effective assistance of counsel and his right to be brought to trial within 120 days. *Id.* at 156. The court noted,

" 'To argue that [defendant] was forced to choose as he did is to argue technicalities. The right to a speedy trial and the right to avoid a precipitous trial are separate but related rights. Both are designed to assure an accused a fair trial, to prevent undue delay in one instance and undue haste in the other. He can demand action or avoid action as the exigencies of his situation may dictate. But fairness and justice are not a one-way street. *** The fact that on occasion the accused might have to jeopardize the legislative benefits of the four-month rule by asserting his right to a continuance does not entail a denial of his right to a speedy trial. *** The election was defendant's to determine on the basis of what would better insure him a fair trial, and, having chosen to proceed, his present argument is nothing more than technical obfuscation.' " *Id.* at 156-57 (quoting *People v. Johnson*, 45 Ill. 2d 38, 43-44 (1970)).

The court found the constitution does not forbid requiring a defendant to choose between these rights. *Id.* at 157.

¶ 30    Further, the court examined the record and found the defendant was not denied the effective assistance of counsel as a consequence of his election to proceed to trial over counsel's objection. *Id.* The court noted the trial was relatively short and did not involve complex issues of law or fact which would require lengthy preparation by defense counsel. *Id.* Additionally, the court noted the State had given defense counsel the materials it would normally have given in discovery and defense counsel was permitted to consult with the State's witnesses. *Id.* The court rejected as conjecture the defendant's argument that more time for preparation would have permitted defense counsel to undertake a more thorough investigation where such argument assumed such an investigation would have produced other evidence favorable to the defendant.

*Id.* at 158. Additionally, the court found its review of the transcript "conclusively show[ed] that defense counsel conducted a vigorous defense and exhibited no lack of effectiveness in representing defendant at any stage of the proceedings in the trial court." *Id.*

¶ 31    In *People v. Williams*, 59 Ill. 2d 402, 406 (1974), the supreme court likewise concluded the defendant was not denied due process of law by being required to choose between the right to effective assistance of counsel and the right to a speedy trial. The defendant in that case, like the defendant in *Lewis*, insisted on being brought to trial within the speedy-trial term despite his attorney's representation to the court that he needed a continuance to prepare for trial. *Id.*; see also *People v. Lee*, 27 Ill. App. 3d 712, 719-21 (1975) (following *Williams* and rejecting defendant's contention that he was denied due process of law); *People v. Webb*, 38 Ill. App. 3d 629, 634 (1976) (When a defendant insists on trial without delay, the court may either allow the continuance over the defendant's objection or comply with the defendant's demand for trial.).

¶ 32    The supreme court's holdings in *Lewis* and *Williams* demonstrate it is not necessarily error for a trial court to honor a defendant's insistence on being brought to trial within the statutory speedy-trial term over his counsel's request for a continuance due to a lack of preparedness where the defendant is unable to show prejudice resulted from the trial court's decision. In this case, the record shows the trial court carefully balanced defendant's right to a speedy trial with his right to effective assistance of counsel. By granting continuances on June 7 and 21 and ultimately setting the matter for trial on July 5, the court ensured defendant was brought to trial within the 120-day term contemplated by the speedy-trial statute, while at the same time allowing defense counsel time to familiarize himself with the State's discovery, including the videos, and adequately prepare for trial.

¶ 33 Indeed, our careful examination of the record belies defendant's argument on appeal that his counsel was not prepared for trial. The record establishes the issues at trial were simple and defense counsel extensively cross-examined the two witnesses called by the State. The record demonstrates he effectively argued for acquittal based not only on his cross-examinations but also on what was depicted in the video. Notably, defense counsel did not request a continuance on July 5, 2016, the day of trial, due to his lack of preparedness. Moreover, at defendant's continued sentencing hearing, after defendant claimed he was forced to forego a jury trial in favor of a bench trial, counsel stated he had been "fully prepared to go forward on a jury trial."

¶ 34 Defendant, citing *Perry v. Leeke*, 488 U.S. 272, 278 (1989), argues his counsel was unable to assist him with a " 'variety of trial related matters': to review discovery, to negotiate plea offers, to conduct an investigation, and to formulate a strategy with [defendant]." However, he points only to one "step" which the record affirmatively demonstrates counsel could not have taken due to the court's decision to honor defendant's speedy-trial demand, which is that counsel was unable to review hours of surveillance video with his client.[4] Other than defendant's assertion relating to counsel's inability to review the surveillance video with him, the record provides no support for defendant's argument and it is nothing more than mere conjecture. See *Lewis*, 60 Ill. 2d at 158. Further, the record establishes only that counsel was unable to view the video with defendant, not that counsel himself was not able to see the video prior to trial. We cannot conclude defendant was prejudiced as a result of his choice to proceed to trial despite the fact counsel was unable to show him the video.

---

[4] We note the surveillance tape contains footage from eight separate cameras, totaling 315 minutes. The incident itself lasted approximately one minute.

¶ 35    The cases defendant relies upon to support his assertion that the trial court erred by honoring defendant's demand for trial over counsel's objection are inapposite. In *People v. Carr*, 9 Ill. App. 3d 382, 383-84 (1972), the appellate court held the trial court properly granted defense counsel's request for a continuance for more time to prepare over defendant's assertion of his speedy trial rights. In *People v. Bowman*, 138 Ill. 2d 131, 148-49 (1990), the supreme court held the defendant was unable to establish a violation of his speedy-trial rights where, to give defense counsel more time to prepare, the trial court granted defense counsel a continuance. In the instant case, unlike *Carr* and *Bowman*, defense counsel did not tell the trial court he was not prepared to try the case or request a continuance on the day the matter was set for trial. In *People v. Keys*, 195 Ill. App. 3d 370 (1990), the issue was whether the defendant's attorney was ineffective for failing to make a speedy-trial demand and not, as here, whether the trial court erred by honoring defendant's speedy-trial demand over counsel's objection. Accordingly, these cases did not specifically address the issue here: whether counsel, and not defendant, holds the ultimate decision-making authority with respect to speedy-trial demands.

¶ 36    Another case relied upon by defendant, *Kaczmarek*, 207 Ill. 2d at 298, noted that "[g]enerally, the decision to demand a speedy trial and to seek dismissal of the State's charges on such grounds are matters left to the sound strategic decision of counsel." But the court also recognized the constitution does not forbid requiring a defendant to choose between a speedy trial and effective assistance of counsel. *Id.* Thus, *Kaczmarek* lends further support to our conclusion that the trial court in this case did not err by honoring defendant's speedy-trial demand.

¶ 37    In this case, defendant made his choice and exercised his speedy-trial rights at the risk of being denied his right to an attorney who was fully prepared to defend him at trial. But, as we have already concluded, the record establishes the trial court carefully balanced his right to choose with his right to effective assistance of counsel, and it clearly shows counsel was not only adequately prepared but also effectively represented defendant in accordance with his sixth amendment right to counsel. Accordingly, we conclude the trial court did not err by honoring defendant's speedy-trial demand.

¶ 38    Defendant next argues the trial court violated his right to due process by failing to hold a fitness hearing. Specifically, defendant argues the court's comments at the June 7, 2016, and August 2, 2016, hearings and its decisions to order two BCXs demonstrated the court had implicitly found a *bona fide* doubt as to defendant's fitness, which required the court to hold a fitness hearing.

¶ 39    Due process bars prosecuting or sentencing a defendant who is not fit to stand trial. *People v. Sandham*, 174 Ill. 2d 379, 382 (1996). A defendant is presumed to be fit to stand trial and be sentenced. 725 ILCS 5/104-10 (West 2016). A defendant is unfit where his mental or physical condition renders him unable to understand the nature and purpose of the proceedings against him or assist in his defense. *Id.*; *People v. Haynes*, 174 Ill. 2d 204, 226 (1996). A determination of fitness requires the defendant to have a sufficient present ability to consult with his attorney with a reasonable degree of rational understanding and a rational as well as factual understanding of the proceedings against him. *People v. Stahl*, 2014 IL 115804, ¶ 24. A defendant may be fit to stand trial even if his mind is otherwise unsound. *Haynes*, 174 Ill. 2d at 226.

¶ 40    "There are no fixed or immutable signs that invariably indicate the need for further inquiry into a defendant's fitness[.]" (Internal quotation marks omitted.) *People v. Hanson*, 212 Ill. 2d 212, 222 (2004). The trial court must order a fitness hearing to determine the defendant's fitness to stand trial when there exists a *bona fide* doubt as to the defendant's fitness. *People v. Qurash*, 2017 IL App (1st) 143412, ¶ 43. The factors which may create a *bona fide* doubt of a defendant's fitness include the defendant's irrational behavior, his demeanor at trial, any prior medical opinion relating to the defendant's competence, and any representations by defense counsel relating to the defendant's competence. *People v. Eddmonds*, 143 Ill. 2d 501, 518 (1991). The mere act of ordering a BCX does not, by itself, establish the trial court found a *bona fide* doubt with respect to the defendant's fitness. *Qurash*, 2017 IL App (1st) 143412, ¶ 43 (citing *Hanson*, 212 Ill. 2d at 222).

¶ 41    The defendant bears the burden of proving there is a *bona fide* doubt of fitness. *Hanson*, 212 Ill. 2d at 222. A *bona fide* doubt is one which raises a real, substantial, and legitimate doubt as to the defendant's mental capacity to meaningfully participate in his defense and cooperate with counsel. *People v. Eddmonds*, 143 Ill. 2d at 518. Determining whether a *bona fide* doubt exists is a matter left to the trial court's discretion. *Hanson*, 212 Ill. 2d at 222. Thus, we will reverse only where the record establishes the court abused its discretion. *People v. Hill*, 345 Ill. App. 3d 620, 626 (2003).

¶ 42    In an apparent acknowledgement that he has forfeited review of this issue by failing to include it in his posttrial motion, defendant asserts we may grant him relief under the second prong of the plain-error doctrine. See *People v. Gipson*, 2015 IL App (1st) 122451, ¶ 28 (because fitness for trial involves a fundamental right, alleged errors concerning fitness may be reviewed

under the plain-error doctrine). The plain-error doctrine is a narrow and limited exception to the general forfeiture rule which permits a reviewing court to review unpreserved errors where (1) the evidence is closely balanced and the error threatened to tip the scales of justice against the defendant, or (2) the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process. *People v. Garcia*, 2012 IL App (1st) 103590, ¶ 121. The first step in plain-error analysis is to determine whether error occurred. *Id.*

¶ 43    Here, the trial court never expressly stated it found a *bona fide* doubt as to defendant's fitness and did not hold a fitness hearing. The record supports the court's decision. First, the forensic psychiatrist who examined defendant both before and after trial concluded defendant was fit to stand trial. The forensic psychiatrist's June 20, 2016, letter received by the trial court indicated that defendant was not currently prescribed any psychotropic medication and, while defendant had vocalized some "odd beliefs," he demonstrated he was cognizant of the charges, understood the nature and purpose of the proceedings, showed the ability to cooperate with his attorney, and discussed the details of his case and desired outcome in a rational manner unaffected by his psychiatric symptoms. The psychiatric summary enclosed with the letter established defendant not only had a keen understanding of the present case but also court proceedings in general and was even able to discuss potential legal strategy and the reasoning behind it. The second letter from the forensic psychiatrist to the trial court indicates defendant provided the forensic psychiatrist with a spontaneous, coherent, logical, and detailed report about the status of his case and the ultimate outcome.

¶ 44    Defendant contends, however, the record does not indicate the trial court ever read or considered the June 20, 2016, letter. According to defendant, the record shows the letter was not

acknowledged by anyone until after defendant's trial, which "suggests" the court never read it. We disagree. The fact the letter was not acknowledged in open court prior to trial does not affirmatively establish the court did not read it.

¶ 45    Defendant also points to his counsel's comments to the trial court regarding his fitness to stand trial. Counsel's representations to the court relating to his client's fitness are a factor which may be considered. *Eddmonds*, 143 Ill. 2d at 518. The record indicates defense counsel made two representations to the court which called defendant's fitness into doubt. On June 7, 2016, defense counsel told the court he did not know if his client was fit because the BCX had not yet been completed. On July 5, 2016, defense counsel told the court defendant was making statements counsel found "alarming" and made counsel question defendant's sanity and whether he should be on medication. Notably, however, defense counsel never asked the trial court to hold a fitness hearing. While counsel's representations were a factor to be considered, they could not, by themselves, raise a *bona fide* doubt of fitness. See *Hanson*, 212 Ill. 2d at 224.

¶ 46    In any event, counsel's comments on June 7, 2016, merely demonstrate the results of the BCX had not yet been received so he, and not the trial court, had doubts as to defendant's fitness. On June 21, 2016, after the BCX had been completed and defendant had been found fit to stand trial, counsel did not raise the issue of defendant's fitness to the trial court. Counsel's comments on July 5, 2016, did not call into doubt defendant's ability to understand the nature of the proceedings or ability to cooperate with counsel and participate in his defense. Rather, those comments related to defendant's sanity and need for medication. See *Haynes*, 174 Ill. 2d at 226 (fitness refers only to defendant's ability to function within the context of trial and a defendant may be found fit despite possessing an otherwise unsound mind).

¶ 47    Defendant also notes the trial court recognized as irrational and illogical defendant's statements prior to trial that he was his "own payee for Social Security benefits" and that OPR had reviewed the incident and resolved it in his favor. According to defendant, the trial court implicitly found a *bona fide* doubt, which is evidenced by the court's recognition of defendant's statements as illogical and its ordering that the BCX be completed before trial.

¶ 48    The fact the court ordered the first BCX does not establish it implicitly found a *bona fide* doubt. See *Hanson*, 212 Ill. 2d at 222. This conclusion is supported by the court's finding prior to trial on July 5, 2016, after defense counsel raised his doubts as to defendant's sanity and need for medication, that defendant was "acting okay here." See *Eddmonds*, 143 Ill. 2d at 518 (court may consider defendant's demeanor during the proceedings). While the court may have been concerned with defendant's behavior on June 7, 2016, other instances during the proceedings demonstrated defendant understood the nature of the proceedings and was able to assist in his defense. For instance, defendant responded appropriately to the trial court's questions, asked the court for permission to speak and did not speak out of turn, and otherwise demonstrated his deference to the court's authority. See *Hill*, 345 Ill. App. 3d at 628. Defendant told the court he understood the difference between a bench and jury trial and knowingly and voluntarily waived his right to a jury trial. See *id.* at 628-29. Further, defendant told the court he understood his right to testify in his defense and, after conferring with his attorney, informed the court he did not want to testify. See *id.* at 628. Accordingly, we conclude defendant's isolated statements and the court's concerns did not, in light of the record as a whole, establish a *bona fide* doubt prior to trial.

¶ 49    Defendant argues the concerns raised before trial continued to support a finding of *bona fide* doubt after trial, especially where there was more evidence to support such a finding. In support, defendant notes the PSI and the letter from defendant's mother indicated defendant had been diagnosed with schizophrenia and had taken an antipsychotic medication but had stopped taking it. Defendant also points to his comments in allocution that his thinking was sometimes "sporadic," that he sometimes heard voices, and thanking the State for coming to a "compromise." According to defendant, when the trial court stated it was not comfortable with what had been brought up during the hearing and ordered a second BCX, it implicitly found a *bona fide* doubt as to defendant's fitness after trial. We disagree.

¶ 50    The record fails to support defendant's argument the trial court implicitly found a *bona fide* doubt as to defendant's fitness. The court asked defense counsel for the results of the first BCX, which revealed defendant was fit to stand trial. The court then asked defendant whether he had heard voices at any time throughout the proceedings, and defendant responded he had not. Apparently not completely satisfied that there was not a *bona fide* doubt as to defendant's fitness, the court ordered a second BCX. This order does not establish the court had a *bona fide* doubt. *Qurash*, 2017 IL App (1st) 143412, ¶ 43. Rather, the court's actions demonstrated it was using the tools at its disposal, *i.e.*, a BCX, to assist in determining whether a *bona fide* doubt existed. At the continued sentencing hearing, the court asked for the results of the second BCX, which found defendant was fit. Although the court did not expressly indicate its determination as to *bona fide* doubt, by then proceeding with the sentencing, the court implicitly found no *bona fide* doubt as to defendant's fitness. See *Hill*, 345 Ill. App. 3d at 626.

¶ 51    The record of the posttrial proceedings supports this conclusion. The first and second BCXs both indicated that defendant was able to understand the nature of the proceedings and participate in his defense. Defendant told the trial court that while he heard voices on occasion, he did not hear any voices throughout the pendency of the proceedings. He acted appropriately during the proceedings, appropriately addressed the court, made coherent statements in allocution on both occasions, did not speak out of turn, and deferred to the court's authority. See *id.* at 628 (finding no *bona fide* doubt as to fitness where defendant acted appropriately throughout the pendency of the proceedings, responded appropriately to the court's questions and indicated deference to the court's authority, and indicated an understanding of the court's admonishments).

¶ 52    In sum, viewing the record as a whole, we conclude there existed no *bona fide* doubt as to defendant's fitness to stand trial which would have necessitated a fitness hearing. The record contains no indication defendant did not have the ability to consult with his attorney with a reasonable degree of rational understanding and a rational as well as factual understanding of the proceedings against him at the time of trial or sentencing. See *Stahl*, 2014 IL 115804, ¶ 24. Accordingly, we conclude the trial court did not abuse its discretion in not holding a fitness hearing and, because there was no error, defendant is not entitled to relief under the plain-error doctrine.

¶ 53    For the reasons stated, we affirm the trial court's judgment.

¶ 54    Affirmed.