THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
GARY CROWDER, Defendant-Appellant.

Fourth District   No. 4—88—0151

Opinion filed September 30, 1988.

Daniel D. Yuhas and Lawrence Bapst, both of State Appellate Defender's Office, of Springfield, for appellant.

Donald M. Cadagin, State's Attorney, of Springfield (Kenneth R. Boyle and Robert J. Biderman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

After a bench trial, the circuit court of Sangamon County convicted defendant Gary Crowder of armed robbery (Ill. Rev. Stat. 1987, ch. 38, par. 18—2(a)) and aggravated battery (Ill. Rev. Stat. 1987, ch. 38, par. 12—4(b)(1)). The court sentenced defendant to 15 years' imprisonment for the offense of armed robbery and five years for the aggravated battery, the terms to run concurrently. Defendant appeals arguing the unreliability of the identification evidence. We affirm.

Defendant was charged with armed robbery and aggravated battery in connection with the shooting and robbery of David Lacy in the early morning hours of October 17, 1987. Lacy testified that after he left a Springfield social club around 4:30 a.m. two men approached him as he entered his car. One of the men, whom Lacy identified in court as defendant, pointed a gun through the car window and ordered Lacy to get out. Defendant told Lacy he was being robbed and to give up his money. Lacy gave defendant $8. Defendant then placed the gun against Lacy's forehead and pulled the trigger, but the gun misfired. After the gun was recocked, defendant placed it against Lacy's neck and grabbed him by the collar. He proceeded to strike Lacy on the side of the head with the gun. When the blow knocked Lacy to the ground, defendant shot him in the leg. Just before Lacy

was able to run away, he heard the gun misfire again as defendant pointed it at Lacy's head.

On cross- and redirect examinations, Lacy said he was sure he correctly identified defendant as his attacker, even though he admitted he was frightened and it was dark at the time.

Two days after the crime, a police officer showed Lacy a five-picture photographic lineup. The officer testified Lacy indicated the photograph of defendant depicted the man who robbed and shot him. Lacy identified defendant's picture within 5 to 10 seconds. The photo array depicted men of the same race and facial characteristics, but on cross-examination, the officer admitted defendant's photograph was the only one of the five which lacked a sticker covering a portion of the picture. The trial court denied defense counsel's motion to exclude the photographic evidence and to quash Lacy's in-court identification of defendant.

Defendant denied the charges and testified he was at a motel with his girlfriend at the time the offense was committed.

In closing, defense counsel again argued the evidence was insufficient to convict defendant based on a suggestive photographic lineup and the victim's early morning identification of defendant when it was dark and the victim was frightened. The trial court found defendant guilty as charged. Defendant filed a written post-trial motion for a new trial, in part arguing the evidence was insufficient to support a verdict of guilty.

Although defendant made a general post-trial motion, he failed to specifically include in it his arguments the initial identification of defendant was unreliable and the later photographic lineup was suggestive. For this omission, the State argues the issue of the reliability of the identification evidence has been waived on review. *People v. Shum* (1987), 117 Ill. 2d 317, 512 N.E.2d 1183.

▇ Our supreme court has emphasized the importance of specificity in post-trial motions. (*Brown v. Decatur Memorial Hospital* (1980), 83 Ill. 2d 344, 415 N.E.2d 337.) In criminal cases, both an objection at trial and a written post-trial motion raising the same issue are required to avoid waiver in the absence of plain error. (*People v. Enoch* (1988), 122 Ill. 2d 176, 185-91, 522 N.E.2d 1124, 1129-32.) However, in a bench trial, a post-trial motion is not necessary to preserve for review questions addressing the sufficiency of the evidence, or other types of issues if they were first presented to the trial court. (*People v. Larsen* (1977), 47 Ill. App. 3d 9, 361 N.E.2d 713; *People v. Morris* (1979), 79 Ill. App. 3d 318, 398 N.E.2d 38.) Consequently, we will review defendant's argument the identification testimony pre-

sented at his trial was unreliable and, thus, insufficient to support his conviction.

Defendant argues Lacy's eyewitness testimony identifying the perpetrator of the armed robbery and aggravated assault was unreliable because (1) he did not have a good opportunity to view his attacker under adequate conditions during the crime and (2) the later photographic identification was impermissibly suggestive.

■ A criminal conviction cannot be based on vague, doubtful, or uncertain identification testimony. (*People v. Ash* (1984), 102 Ill. 2d 485, 468 N.E. 2d 1153; *People v. Henne* (1988), 165 Ill. App. 3d 315, 518 N.E.2d 1276.) However, reliable testimony of a single witness who viewed the defendant under circumstances that would permit a positive identification is sufficient to support a conviction. *People v. Watkins* (1970), 46 Ill. 2d 273, 263 N.E. 2d 115; *People v. Chevalier* (1987), 159 Ill. App. 3d 341, 512 N.E.2d 1001, *appeal denied* (1987), 117 Ill. 2d 546, 517 N.E.2d 1089.

■ A challenge to the sufficiency of identification testimony on appeal must be viewed in a light most favorable to the prosecution. (*People v. Lilly* (1985), 139 Ill. App. 3d 275, 487 N.E.2d 414; *Chevalier*, 159 Ill. App. 3d 341, 512 N.E.2d 1001.) A reviewing court will not set aside a conviction for insufficient evidence unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of defendant's guilt. *People v. Brisbon* (1985), 106 Ill. 2d 342, 478 N.E.2d 402, *cert. denied* (1985), 474 U.S. 908, 88 L. Ed. 2d 241, 106 S. Ct. 276.

■ After positively identifying defendant in court, Lacy testified on cross-examination he gave a description of his attacker to police immediately after the robbery. He described the man as around 6 feet tall and weighing 170 pounds. Lacy was able to report in detail that the robber was wearing a cap with writing on it, a blue jacket and pants, and two different colored shoes, one red and one white.

When defense counsel suggested Lacy did not get a good look at his attacker because he was scared and it was dark, Lacy replied: "I got a good enough [*sic*], yeah it was dark, I seen him he was right up in my collar, I s[e]en him, I will never forget him." On redirect examination, Lacy indicated there was no doubt in his mind the man sitting at the defense table was the person who shot and robbed him on October 17, 1987, regardless of the lighting conditions.

From the record we conclude Lacy had ample opportunity to get an unobstructed view of defendant when he removed Lacy from his car at gunpoint, took his money and put the gun directly against Lacy's head. After beating his victim with a gun, the evidence showed

defendant then shot Lacy at close range. Under those circumstances, we find Lacy's identification testimony was reliable, despite his fear and the minimal light during the crime.

■ Next, we consider the reliability of the photographic identification. A conviction based on an eyewitness' in-trial identification of the defendant following a pretrial identification by photographic lineup will be set aside only if the photographic array was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." (*Simmons v. United States* (1968), 390 U.S. 377, 384, 19 L. Ed. 2d 1247, 1253, 88 S. Ct. 967, 971; *People v. Johnson* (1970), 45 Ill. 2d 38, 257 N.E.2d 3; *People v. Levine* (1981), 99 Ill. App. 3d 141, 426 N.E.2d 215.) Such a determination depends, in part, on the opportunity of the witness to view the criminal at the time of the crime, the accuracy of his prior description, the level of certainty demonstrated when the identification was made, and the time lapse between the crime and the identification. *Levine*, 99 Ill. App. 3d 141, 426 N.E.2d 215.

■ In this case, five photographs depicting men of seemingly the same age, the same race, and with similar facial characteristics were shown to the eyewitness-victim several days after the crime occurred. The photos, all about the same size, were displayed on a manila folder. Three stickers affixed horizontally across the bottom of each photo numbered them in order while covering any identifying information contained in the pictures. The officer who prepared the array testified he covered the vertical height designations along the right side of the photos with a sticker in order to focus the identification solely on the suspect's facial characteristics. Defendant's photograph did not show his height designation; therefore, a sticker was not affixed to his picture.

The evidence shows that during commission of the crime, Lacy had ample opportunity to view defendant at very close proximity, after which he accurately described defendant to the police. Lacy identified defendant from a photo array without prompting or hesitation after viewing it for 5 to 10 seconds only three days after the crime. Later, Lacy made a positive in-court identification of the same man and testified his level of certainty was unquestionable.

After careful consideration of the photographic lineup in question, we cannot conclude it was impermissibly suggestive. The absence of an unobtrusive vertical sticker is not a feature which we find blatantly singles out or draws attention to defendant's photograph. Moreover, assuming the array was suggestive, defendant is not entitled to a new trial because, for the reasons already stated, we find

Lacy's in-court identification of defendant had an origin independent of the photographic procedure. (*Manson v. Brathwaite* (1977), 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243; *People v. McTush* (1980), 81 Ill. 2d 513, 410 N.E.2d 861.) A substantial likelihood of misidentification is not present in this case.

The judgment of the circuit court of Sangamon County is affirmed.

Affirmed.

GREEN, P.J., and SPITZ, J., concur.