THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MELVIN SMITH, Defendant-Appellant.

First District (4th Division)    No. 1—91—2439

Opinion filed November 4, 1993.—Rehearing denied December 16, 1993.

Michael J. Pelletier and Patricia Unsinn, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Robyn Berman, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

After a bench trial in the circuit court of Cook County defendant, Melvin Smith, was convicted of two counts of armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2(a) (now 720 ILCS 5/18—2(a) (West 1992))), and sentenced to a 14-year term of imprisonment in the Illinois Department of Corrections.

On appeal, defendant contends (1) defense counsel's presentation of an alibi defense which did not correspond to the date and time of the offense denied him effective assistance of counsel; (2) defense counsel's failure to move to suppress identification evidence obtained from an impermissibly suggestive lineup denied him effective assistance of counsel; and (3) the trial court improperly sentenced him based on an "inaccurate assumption" respecting his criminal history.

We affirm.

The following pertinent facts were adduced at trial. On the night of November 22, 1990, seven young men, Kindred Colin, Anthony Williams, Rahman Williams, James Carr, Ollie Smith, Lloyd Galloway, and Larry Galloway, went to the A.K.A.'s nightclub in Chicago. The next morning, at approximately 2 a.m., they left the club and went to Rahman's car to retrieve their jackets.

As they walked back to the club, they were approached by a group of men, one of whom yelled, "Gangster Disciple." Defendant was identified as a member of this group. Instead of going back to the club, the group of seven decided to leave and went to Kindred's car. They then drove to Rahman's car. Rahman, Anthony and Lloyd got into Rahman's car.

The group of men who yelled the gang name then ran over to Rahman's car. One of the men held a gun to the driver's side of the car. The young men remaining in Kindred's car, which was parked

two car lengths in front of Rahman's car, drove to a nearby Dunkin Donuts and called police.

Upon seeing the gun, Rahman ducked down and a shot was fired shattering the window in the back seat of the car. Rahman was then pulled out of the car, told to take off his coat and hit in the face. Rahman testified that defendant was the one who hit him in the face. He also believes he handed his coat to defendant. Rahman was then told to run and when he returned to the scene his car was gone. Anthony stated that two members of the group got into the car, pointed a gun at him, and took both his coat and gold chain.

On December 1, 1990, Rahman identified defendant in a lineup as the person who hit him in the face. James Carr and Larry Galloway also identified defendant as a member of the group who robbed them.

Richard Morrison, the man who wielded the gun, told police that he belonged to the Gangster Disciple street gang and that he and some other members of the gang had decided to rob the victims. They knew the location of Rahman's car, accosted the victims, took their property at gunpoint, and stole the car.

Following a bench trial, defendant was convicted of two counts of armed robbery and was subsequently sentenced to a 14-year term of imprisonment in the Illinois Department of Corrections. On appeal, defendant initially argues that defense counsel's presentation of an alibi defense which did not encompass the time the offense took place denied him effective assistance of counsel.

The applicable standard used to determine effective assistance of counsel violations was promulgated by the United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052. The Court outlined a two-pronged test, stating as follows:

> "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

Defendant must further establish actual prejudice resulting from counsel's deficient performance. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence

in the outcome." *Strickland,* 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

Our supreme court has similarly stated that an ineffective assistance of counsel demonstration must establish counsel's actual incompetence regarding his representation of defendant and substantial prejudice affecting the trial's outcome. (*People v. Greer* (1980), 79 Ill. 2d 103, 120-21.) We believe defendant has failed to demonstrate such manifest prejudice.

■ Defendant was positively identified in a lineup by three witnesses as one of the individuals who committed the, crime. In convicting defendant, the trial judge stated: "I believe the State's witnesses were very credible, there were several identifications made." She also reiterated this belief at the sentencing hearing, stating: "And the way I recall it, the witnesses pretty much did say the same thing. I thought they were credible and believable, and one of them or more than one identified each of these people." The alibi testimony of which defendant complains, therefore, had no bearing on the trial judge's determination of his guilt or innocence. Instead, this case was based on identification evidence and the veracity of the witnesses who provided it. We find that defendant was not prejudiced by the alibi testimony as his guilt was not based on such testimony and as the outcome would not have been different had this testimony not been introduced. See *People v. Borges* (1984), 127 Ill. App. 3d 597.

Next, defendant argues that he was denied effective assistance of counsel because defense counsel failed to file a motion to suppress identification evidence obtained from an "impermissibly suggestive" lineup. Defendant specifically bases this assertion on the fact that one of the victims was shown a photograph of him prior to the victim's identification of him in a lineup.

"[I]t is well settled that 'whether or not a motion to suppress should be filed in a criminal case is a matter of trial tactics and almost invariably has no bearing on the issues of competency of counsel.' " (*People v. Conley* (1983), 118 Ill. App. 3d 122, 129, quoting *People v. Hines* (1975), 34 Ill. App. 3d 97, 100-01.) We believe defense counsel's decision to attack the credibility of the identification witness through cross-examination rather than to file a motion to suppress was strategic in nature and a reasonable exercise of judgment.

■ Furthermore, as previously elucidated, a claim of ineffective assistance of counsel must satisfy the *Strickland* test, *i.e.,* counsel's conduct must have been so prejudicial as to have undermined the probability of the trial's outcome. Defendant has not made this demonstration and his ineffective assistance of counsel argument accordingly fails.

Finally, defendant maintains that his sentence was improperly influenced by the trial court's "inaccurate assumption" that he had previously been convicted of armed robbery. Defendant submits that his 14-year sentence was based on the trial court's belief that he was a repeat offender who was "one Class X conviction away from qualifying for mandatory natural life imprisonment as a habitual offender." This assumption, he posits, merits resentencing.

According to the presentence report ordered by the trial judge and prepared by the probation officer, defendant was convicted of the following: robbery in June 1986, for which he received 30 months' probation; robbery in August 1987, for which he was sentenced to a three-year term of imprisonment in the Illinois Department of Corrections; and armed robbery in October 1987, for which he was also sentenced to three years of imprisonment. In sentencing defendant, the trial judge stated: "I have reviewed every page of the presentence investigation reports and I have reviewed all the testimony I heard in this case."

A sentencing judge is afforded broad discretionary power to consider various sources and types of information thus ensuring that the sentencing is within the parameters outlined by the legislature. The evidence used must be both relevant and reliable. (*People v. Williams* (1992), 149 Ill. 2d 467, 490.) "A presentence report *** is generally a reliable source for the purpose of inquiring into a defendant's criminal history." *Williams*, 149 Ill. 2d at 491.

■ Therefore, in determining an appropriate sentence for defendant, the trial court properly relied on the presentence report which indicated defendant had previously been convicted of armed robbery. At no point during the sentencing hearing did defendant bring a deficiency in the presentence report to the trial court's attention.

"Any claimed deficiency or inaccuracy within a presentence report must first be brought to the attention of the sentencing court, and a failure to do so results in waiver of the issue on review." (*Williams*, 149 Ill. 2d at 493; see *People v. Barfield* (1989), 187 Ill. App. 3d 190; *People v. Stewart* (1989), 186 Ill. App. 3d 833.) Accordingly, defendant's failure to dispute the validity or accuracy of the presentence report during sentencing waives this issue for purposes of review.

For the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAHILL, P.J., and HOFFMAN, J., concur.