NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 190803-U

NO. 4-19-0803

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 9, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| STEPHEN D. SMITH, | ) | No. 16CF1075 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Robert C. Bollinger, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Knecht and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, finding the trial court conducted an adequate
*Krankel* inquiry, the trial court did not commit manifest error when it declined to
appoint new counsel to investigate defendant's claims, and trial counsel did
not provide ineffective assistance.

¶ 2    In March 2017, a jury found defendant, Stephen D. Smith, guilty of attempt (first

degree murder) (720 ILCS 5/8-4(a) (West 2016)), aggravated battery with a firearm (720 ILCS

5/24-1.2(a)(2) (West 2016)), and aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2)

(West 2016)). The trial court sentenced defendant to 40 years in the Illinois Department of

Corrections followed by 3 years' mandatory supervised release, and, per defendant's request, it

directed the clerk to file a timely notice of appeal on defendant's behalf. Meanwhile, defendant

also filed *pro se* a motion for reduction of his sentence, identifying several trial errors, including

a claim his "attorney only argued some issues not every issue." Believing it lacked jurisdiction to

hear defendant's motion, the trial court did not hold a hearing on it. On appeal, this court

remanded with instructions for "the trial court to conduct a preliminary *Krankel* inquiry into defendant's *pro se* claim of ineffective assistance of counsel." *People v. Smith*, 2019 IL App (4th) 170393-U, ¶ 22; see also *People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984). The trial court conducted the *Krankel* inquiry in October 2019 with defendant, defense counsel, and the State present. Following statements from defendant and defense counsel, the court declined to appoint new counsel to investigate defendant's claims.

¶ 3            In this appeal, defendant raises three issues relating to the trial court's *Krankel* decision and his conviction: (1) the trial court failed to conduct an adequate *Krankel* inquiry; (2) the trial court erred by failing to appoint defendant new counsel to investigate defendant's ineffective-assistance claims; and (3) trial counsel's failures to argue the photographic lineup was improper vis-à-vis the statute governing lineups and to request the concomitant jury instruction constituted ineffective assistance of counsel. We disagree.

¶ 4                                  I. BACKGROUND

¶ 5            The underlying facts of this case are set forth in *Smith*, 2019 IL App (4th) 170393-U, where we remanded this matter to the trial court with instructions to hold a *Krankel* inquiry. They will not be repeated here, except when necessary to the analysis. In October 2019, the trial court held the required *Krankel* inquiry, where it allowed defendant to elaborate upon his ineffective-assistance-of-counsel claims and then allowed trial counsel to respond to each claim. Defendant identified several errors he believed counsel made before and during trial, but as it relates to this appeal, he believed trial counsel rendered ineffective assistance by not moving to suppress two suggestive photo identifications whereby the victim identified defendant as the person who shot him. Addressing this particular ineffective-assistance claim, the following exchange occurred between the court and defendant:

"THE COURT: In your motion for reduction of sentence that you filed on June 2, 2017, you stated, 'Attorney only argued some issues, not every issue.' Would you like to explain anything further about that claim?

DEFENDANT: What I meant was the simple fact that I asked him numerous times to put in my motion to suppress the identification. He never—he never once entered the motion He only argued some issues about the situation. *** I was in this—the way I'm looking at it as far as with my photo lineup, I mean, my photo array, it's suggestive. My trial counsel knew about it. I explained it to him. Even in my trial transcripts, the so-called witness's last victim, he confused on who supposed to have committed this crime. My motion was never considered whatsoever, never even brought to the Court's attention."

The court clarified defendant's claims, asking: "Now you are indicating to the Court that you felt—you feel that [counsel] has erred with respect to—let me make sure that I understand your contentions: *** That the photo line-up was suggestive in that some error was committed there?" Defendant answered, "Yes, sir." When the court asked, "All right. Is there anything further— anything I have missed?" Defendant responded, "No. Not at all. Not at this moment. No." The court again gave defendant the opportunity to elaborate upon his claims by asking: "All right. Anything further you would like to state about that?" And defendant again said, "As far as like my issues? No."

¶ 6        At this point, defense counsel responded to defendant's complaints. Concerning the complaint that he should have moved to suppress the photo identification evidence, counsel explained:

> "With respect to the suppression of the identification, *** a matter of trial strategy. I don't recall anything being there that would lead me to believe we should *** file [a] motion to try and suppress the identification process, as it being improper. More so, what we did try and do at trial was to show the jury that the identification was flawed and I believe that evidence was brought out."

After hearing counsel's explanations, the trial court addressed defendant again, saying "All right. Mr. Smith, anything else you would like to state about these claims?" Defendant answered, "Not at this moment. No." With that, the court informed the parties it would "go back, reread the transcript on these points again and I will issue a written order." Days later, the trial court issued a docket entry declining to appoint new counsel to investigate or take further action on defendant's ineffective-assistance-of-counsel claims.

¶ 7        This appeal followed.

¶ 8                                    II. ANALYSIS

¶ 9        Defendant challenges his conviction on three grounds, all relating to ineffective assistance of counsel: (1) the trial court failed to conduct an adequate *Krankel* inquiry; (2) following the preliminary *Krankel* inquiry, the trial court erred in failing to appoint him new counsel to investigate his ineffective-assistance-of-counsel claims; and (3) trial counsel rendered ineffective assistance of counsel by failing to argue the photo-identification evidence did not

- 4 -

comport with the applicable statute and failing to request a nonpattern jury instruction regarding the photo-identification process. We disagree and affirm.

¶ 10                          A. The Preliminary *Krankel* Inquiry

¶ 11        The pre-*Krankel* "procedure 'serves the narrow purpose of allowing the trial court to decide whether to appoint independent counsel to argue a defendant's *pro se* posttrial ineffective assistance claims.' " *People v. Ayres*, 2017 IL 120071, ¶ 11, 88 N.E.3d 732 (quoting *People v. Patrick*, 2011 IL 111666, ¶ 39, 960 N.E.2d 1114). If, after an inquiry into a defendant's claims, the court finds " 'possible neglect of the case,' it should appoint new counsel to independently investigate and represent the defendant at a separate hearing." *People v. Bell*, 2018 IL App (4th) 151016, ¶ 35, 100 N.E.3d 177 (quoting *People v. Moore*, 207 Ill. 2d 68, 78, 797 N.E.2d 631, 637 (2003)). However, should the court "determine[ ] the [defendant's] claim 'lacks merit or pertains only to matters of trial strategy,' the court may deny the claim without appointing new counsel." *Bell*, 2018 IL App (4th) 151016, ¶ 35 (quoting *Moore*, 207 Ill. 2d at 78).

¶ 12        Though the trial court is not required to automatically appoint new counsel "when a defendant raises a *pro se* posttrial claim" of ineffective assistance of counsel (*People v. Jolly*, 2014 IL 117142, ¶ 29, 25 N.E.3d 1127), it must " 'conduct an adequate inquiry ***, that is, inquiry sufficient to determine the factual basis of the claim.' " *Ayres*, 2017 IL 120071, ¶ 11 (quoting *People v. Banks*, 237 Ill. 2d 154, 213, 934 N.E.2d 435, 468 (2010)). "[A] trial court's method of inquiry at a [preliminary] *Krankel* hearing is somewhat flexible." *People v. Flemming*, 2015 IL App (1st) 111925-B, ¶ 85, 31 N.E.3d 935. Ordinarily, an adequate inquiry may include "(1) questioning the trial counsel, (2) questioning the defendant, [or] (3) relying on its own knowledge of the trial counsel's performance in the trial." *People v. Peacock*, 359 Ill. App. 3d

326, 339, 833 N.E.2d 396, 407 (2005). Whether a trial court properly conducted a preliminary *Krankel* inquiry presents an issue we review *de novo*. *Jolly*, 2014 IL 117142, ¶ 28. But we review a trial court's decision declining the appointment of new counsel following an adequate inquiry for manifest error. *People v. McCarter*, 385 Ill. App. 3d 919, 941, 897 N.E.2d 265, 285 (2008). "Manifest error is that which is 'clearly evident, plain, and indisputable.' " *People v. Johnson*, 206 Ill. 2d 348, 360, 794 N.E.2d 294, 303 (2002) (quoting *People v. Ruiz*, 177 Ill. 2d 368, 384-85, 686 N.E.2d 574, 582 (1997)).

¶ 13                                     1. *Adequate* Krankel *Inquiry*

¶ 14        Defendant argues the trial court's "preliminary inquiry was inadequate" because it "did not ask [defendant] why he and counsel concluded the photo lineup was suggestive or what 'other issues' he expected counsel to argue as to the photo lineup and the identification." According to defendant, "other than allowing [him] to state his claims, the court did not ask [defendant] one follow-up question." Finding no basis for defendant's point of view, we disagree. The trial court conducted an adequate *Krankel* inquiry.

¶ 15        The trial court expressed on the record that it was approaching the preliminary *Krankel* inquiry pursuant to *Moore*, which, like *Peacock*, outlined three ways a trial court can conduct an adequate *Krankel* inquiry, namely: (1) having "[a] brief discussion between the trial court and the defendant may be sufficient," (2) allowing "[t]rial counsel [to] simply answer questions and explain the facts and circumstances surrounding the defendant's allegations," or (3) using "its knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations on their face." *Moore*, 207 Ill. 2d at 78-79. As we see it, the trial court covered all three options here. First, the record shows the trial court gave defendant the opportunity to state his claims. The court then restated the claims to make sure it understood

them. And the court repeatedly asked defendant if he wanted to elaborate further on those claims. Defendant declined each time. Defendant now believes the trial court was obligated to ask probing questions about his claims, but he cites no case law for such a proposition. Instead, the record shows the trial court heeded instruction from case law—it held a brief discussion with defendant about his claims. *Moore*, 207 Ill. 2d at 78; *Peacock*, 359 Ill. App. 3d at 339. Second, the trial court allowed defense counsel to respond to each claim. See *Moore*, 207 Ill. 2d at 78; *Peacock*, 359 Ill. App. 3d at 339. Third, before rendering a decision, the trial court reviewed the transcripts and relied upon its knowledge of defense counsel's performance. See *Moore*, 207 Ill. 2d at 79; *Peacock*, 359 Ill. App. 3d at 339. We therefore find no merit to defendant's claim that the trial court conducted an inadequate *Krankel* inquiry.

¶ 16                                 2. *No Manifest Error*

¶ 17          Defendant next claims the trial court erred in failing to appoint him new counsel following the preliminary *Krankel* inquiry because "trial counsel 'knew' the photo lineup was suggestive," yet he did not move to suppress the evidence. Specifically, defendant believes counsel's decision to show the jury how the identification was "flawed," rather than move to suppress the identification, amounted to ineffective assistance. Defendant reasons that "if counsel had sufficient evidence to demonstrate to the jury that the identification was 'flawed,' surely the same evidence supported moving to suppress the identification entirely." We disagree.

¶ 18          " 'Criminal defendants have a due process right to be free from identification procedures that are unnecessarily suggestive and conducive to irreparable mistaken identification.' (Internal quotation marks omitted.)" *People v. Bahena*, 2020 IL App (1st) 180197, ¶ 32 (quoting *People v. Jones*, 2017 IL App (1st) 143766, ¶ 27, 81 N.E.3d 48). When defendants move to suppress identification evidence, they must make two showings: (1) the

identification procedures were " 'unduly suggestive' " and (2) " 'that the identification was not independently reliable.' " *Bahena*, 2020 IL App (1st) 180197, ¶ 32 (quoting *People v. Lacy*, 407 Ill. 2d 442, 459, 943 N.E.2d 303, 319 (2011)). Citing the United States Supreme Court, our supreme court identified situations where a lineup or identification can be unduly suggestive:

> " '[T]hat all in the lineup but the suspect were known to the identifying witness, that the other participants in a lineup were grossly dissimilar in appearance to the suspect, that only the suspect was required to wear distinctive clothing which the culprit allegedly wore, that the witness is told by the police that they have caught the culprit after which the defendant is brought before the witness alone or is viewed in jail, that the suspect is pointed out before or during a lineup, and that the participants in the lineup are asked to try on an article of clothing which fits only the suspect.' " *People v. Johnson*, 149 Ill. 2d 118, 147, 594 N.E.2d 253, 268 (1992) (quoting *United States v. Wade*, 388 U.S. 218, 233 (1967)).

From these examples, our supreme court surmised that an identification is unduly suggestive when a defendant "is more or less spotlighted by the authorities" or when an identification process singles out a defendant. *Johnson*, 149 Ill. 2d at 147-48; see also *People v. Crowder*, 174 Ill. App. 3d 939, 943, 529 N.E.2d 83, 86 (1988) (concluding the photographic lineup in question was not impermissibly suggestive because it did not blatantly single out or draw attention to the defendant's photograph). When evaluating whether an identification was unduly suggestive, "[c]ourts look to the totality of the circumstances ***." *People v. Joiner*, 2018 IL App (1st) 150343, ¶ 39, 104 N.E.3d 1251.

¶ 19 "The decision of whether or not to file a motion to suppress is best left to trial counsel's discretion." *People v. Kornegay*, 2014 IL App (1st) 122573, ¶ 20, 12 N.E.3d 747. In other words, the decision " ' "whether *** a motion to suppress should be filed in a criminal case is a matter of trial tactics and almost invariably has no bearing on the issues of competency of counsel." ' " *People v. Smith*, 265 Ill. App. 3d 981, 984, 639 N.E.2d 162, 164 (1994) (quoting *People v. Conley*, 118 Ill. App. 3d 122, 129, 454 N.E.2d 1107, 1114 (1983), quoting *People v. Hines*, 34 Ill. App. 3d 97, 100-01, 339 N.E.2d 489, 492 (1975)). For example, trial counsel does not render ineffective assistance by deciding against filing a futile motion. See *People v. Holmes*, 397 Ill. App. 3d 737, 741, 922 N.E.2d 1179, 1184 (2010).

¶ 20 In response to defendant's ineffective-assistance-of-counsel claim relating to the photo-identification evidence, trial counsel said his decision amounted to "a matter of trial strategy." Despite defendant's claim counsel "knew" the photo lineup was suggestive, trial counsel said he did not see a reason for moving to suppress the photo-identification evidence, meaning he did not believe the identification process was unduly suggestive. Counsel did, however, believe the identification was "flawed," which he decided to highlight for the jury. Defendant equates "flawed" with "unduly suggestive," but the two are not equivalent or coextensive terms.

¶ 21 Counsel identified flaws in the identification process in efforts to convince the jury that the victim's identification of defendant (both in court and in the two photo arrays) amounted to a prejudiced identification. He noted each photo array contained similar photos of defendant. He noted defendant's pictures occupied the same spot in both photo arrays for the victim. Counsel highlighted how the victim was only 50% sure of his identification after the first photo array, reminding the jury the victim hesitated in making an identification. Counsel

compared the two photo arrays the victim viewed, reminding the jury that defendant was the only person pictured in both photo arrays. Finally, counsel noted the victim searched Facebook for pictures of defendant before the second photo array. Counsel argued the victim *wanted* to pin this crime on defendant—his ex-wife's boyfriend—and so he *wanted* to see defendant in the photo identifications. These "flaws" do not make the photo identifications "unduly suggestive," though. None of these flaws amount to law enforcement "more or less spotlight[ing]" or blatantly singling out defendant. *Johnson*, 149 Ill. 2d at 147; see also *Crowder*, 174 Ill. App. 3d at 943. Despite the randomness of defendant's picture occupying the sixth spot in both photo arrays the victim viewed, the arrays contained pictures of African American males of similar ages and similar physiques. Defendant did not appear grossly dissimilar to the other men in the photo array. See *Johnson*, 149 Ill. 2d at 147; *Joiner*, 2018 IL App (1st) 150343, ¶ 41. Though defendant was the smallest person shown in the first photo array, the identification was not unduly suggestive. See *Bahena*, 2020 IL App (1st) 180197, ¶¶ 37-38 (explaining that a photo showing slightly less of the defendant's body or a photo showing the defendant's face as larger than other faces in the array is not unduly suggestive). In the same vein, defendant was not wearing distinctive clothing in either photo array. Law enforcement did not single out defendant by saying he had been arrested or showing the victim defendant's picture only. See *Johnson*, 149 Ill. 2d at 147. The "flaws" counsel highlighted during closing arguments did not render the photo identifications unduly suggestive. See *Johnson*, 149 Ill. 2d at 148; *Crowder*, 174 Ill. App. 3d at 943. Since filing a motion to suppress the photo-identification evidence based on these flaws would have been futile, trial counsel did not render ineffective assistance by deciding against that tactic. See *Holmes*, 397 Ill. App. 3d at 741.

¶ 22        Trial counsel made a reasonable, strategic decision by refusing to file a suppression motion doomed to failure and deciding, instead, to undermine the reliability of the victim's identification. See *Smith*, 265 Ill. App. 3d at 984 ("We believe defense counsel's decision to attack the credibility of the identification witness through cross-examination rather than to file a motion to suppress was strategic in nature and a reasonable exercise of judgment."). Accordingly, we cannot say the trial court's decision refusing to appoint defendant counsel amounted to an error that is " 'clearly evident, plain, and indisputable.' " *Johnson*, 206 Ill. 2d at 360 (quoting *Ruiz*, 177 Ill. 2d at 384-85). In other words, because defendant's claim both lacks merit and pertains to trial strategy, the trial court did not err, let alone manifestly err, by declining to appoint him new, independent counsel. *Bell*, 2018 IL App (4th) 151016, ¶ 35.

¶ 23                        B. Ineffective Assistance of Counsel

¶ 24        Defendant alleges he received ineffective assistance from trial counsel. Specifically, he contends counsel's failure to argue the photographic-lineup procedure was improper vis-à-vis the statute governing lineups, coupled with his failure to request a jury instruction regarding the improper lineup, amounted to ineffective assistance of counsel. We disagree.

¶ 25        The Illinois and United States Constitutions guarantee criminal defendants the right to counsel, and the latter mandates, " 'the right to counsel is the right to the effective assistance of counsel.' " *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)); U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. When presented with a defendant's ineffective-assistance-of-counsel claim, we apply the well-established, two-part *Strickland* test. The defendant must prove: (1) counsel rendered deficient performance, meaning counsel's representation fell below an objective standard of

reasonableness as gauged by prevailing professional norms and (2) counsel's deficient performance prejudiced the defendant, *i.e.*, there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. See *People v. Young*, 341 Ill. App. 3d 379, 383, 792 N.E.2d 468, 472 (2003) (citing *Strickland*, 466 U.S. at 687, 694); *People v. Peck*, 2017 IL App (4th) 160410, ¶ 26, 79 N.E.3d 232. When assessing the deficient-performance prong, "a court must indulge a strong presumption that the challenged action, or inaction, was the result of sound trial strategy." *People v. Poole*, 2012 IL App (4th) 101017, ¶ 10, 972 N.E.2d 340. If a defendant fails to prove deficient performance, the court need not consider the prejudice prong, and vice versa. *People v. Torres*, 228 Ill. 2d 382, 395, 888 N.E.2d 91, 100 (2008); *People v. Graham*, 206 Ill. 2d 465, 476, 795 N.E.2d 231, 238 (2003).

¶ 26 Section 107A-2 of the Code of Criminal Procedure of 1963 (Code) outlines the standards and procedures for identification lineups. 725 ILCS 5/107A-2 (West 2016); see *People v. Corral*, 2019 IL App (1st) 171501, ¶ 96, 126 N.E.3d 632. Defendant first argues his attorney proved ineffective by failing to inform the jury how law enforcement did not "strictly comply" with the statute. Defendant contends law enforcement was not transparent regarding which officer administered the photo lineups, which did not strictly comply with section 107A-2(g)(3) of the Code that required the lineup administrator to make an official report listing the names of all law enforcement officers present during the lineup. 725 ILCS 5/107A-2(g)(3) (West 2016). Specifically, defendant points out the official lineup report for the first lineup listed the administrator as J. Kuchelmeister and J. Atkinson as the investigator. The report did not identify any other officer present during the lineup. However, there was conflicting testimony as to whether Kuchelmeister or Detective Callaway administered the lineup. Likewise, the official lineup report for the second lineup listed the lineup administrator as B. Kaylor and the

investigator as B. Hall. The report did not list any other officer present for the second lineup. Yet, again, there was conflicting testimony as to whether B. Kaylor or Ryan Carol administered the lineup. Defendant believes law enforcement was not transparent in either one of two ways— either law enforcement was not forthright in who administered the lineup or law enforcement was not forthright by failing to list all officers who were present for the lineups.

¶ 27 Defendant also argues law enforcement did not strictly comply with the section 5/107A-2(f)(3)(B), which provides "[t]he suspected perpetrator shall not be substantially different in appearance from the fillers based on the eyewitness's previous description of the perpetrator or based on other factors that would draw attention to the suspected perpetrator." 725 ILCS 5/107A-2(f)(3)(B) (West 2016). Even though the statute does not define "substantially different," defendant contends that since he appeared smaller in appearance than the fillers (something the victim pointed out in the identification), law enforcement did not strictly comply with the statute.

¶ 28 Second, defendant argues his attorney proved ineffective by failing to request a nonpattern jury instruction telling the jury it can consider the above noncompliance when weighing the identification evidence. Defendant fails to provide an alternative jury instruction that was in effect at the time of trial and that could or should have been used instead of the instruction defense counsel chose to use.

¶ 29 We do not find counsel ineffective for failing to raise these discrepancies with the jury or failing to request a nonpattern jury instruction. The photo identifications were captured on a video that the jury viewed, meaning the jury saw which officer administered each lineup. Moreover, the jury heard all the testimony, including the inconsistent testimony about who administered the lineups. Finally, the jury saw the official lineup reports, which showed what

- 13 -

officers were present, showed the lineup photos, and showed separately the photo the victim identified—defendant's picture. The jury saw or heard the discrepancies defendant now wishes trial counsel would have clearly presented to the jury. And even assuming these discrepancies mean law enforcement did not strictly comply with the section 5/107A-2 of the Code, we do not see counsel's failure to point out the discrepancies as deficient performance that prejudiced defendant. The jury may consider noncompliance with the statute "to assist in its weighing of the identification testimony of an eyewitness." 725 ILCS 5/107A-2(j)(2) (West 2016). Here, counsel decided to highlight other deficiencies in the victim's identification testimony rather than discuss these alleged picayune statutory deficiencies, which goes to trial strategy. As we noted *supra*, counsel highlighted for the jury how the victim was not wearing his glasses in the first identification and he was hesitant to make an identification because he was only 50% sure he identified the perpetrator. Counsel also pointed out how the victim searched Facebook for pictures of defendant before doing the second photo identification. He noted how the defendant's pictures in the photo array were similar and in the same spot for the photo arrays. Counsel obviously thought these discrepancies were more important and worth emphasizing than law enforcement's alleged failure to strictly comply with section 5/107A-2 of the Code. We see this as a strategic decision, and we "indulge a strong presumption that [this decision] was the result of sound trial strategy." *Poole*, 2012 IL App (4th) 101017, ¶ 10. Likewise, we see counsel's decision on jury instructions a strategic decision that warrants deference. As we have said before, "It is well settled in Illinois that counsel's choice of jury instructions, and the decision to rely on one theory of defense to the exclusion of others, is a matter of trial strategy." *People v. Mister*, 2016 IL App (4th) 130180-B, ¶ 97, 58 N.E.3d 1242; see also *People v. Douglas*, 362 Ill. App. 3d 65, 75, 839 N.E.2d 1039, 1048 (2005) ("Counsel's decision as to what jury instructions to tender

- 14 -

is one of several determinations widely recognized as matters of trial strategy that are generally immune from ineffective assistance claims.").

¶ 30 Though we can decide this case on the deficient-performance prong, we pause briefly to observe that counsel's failure to highlight law enforcement's alleged failure to strictly comply with section 5/107A-2 of the Code and failure to request a nonpattern jury instruction about the noncompliance did not prejudice defendant. We cannot say that but for counsel's failures here, there is a reasonable probability the outcome of the proceeding would have been different—meaning defendant would have been acquitted. See *Young*, 341 Ill. App. 3d at 383. There was ample evidence of defendant's guilt. The photo identification and the in-court identification evidence were admissible. Three times the jury saw and heard the victim identify defendant as the man who shot him. Both the victim and his ex-wife gave similar descriptions of defendant and the shooter on the day of the shooting—both said he was wearing athletic shorts, a white T-shirt, a hat, and low top Air Force Nike sneakers. They also heard and saw evidence from defendant's cell phone placing him in the area of the shooting when it occurred. Finally, the jury heard testimony that defendant had access to his girlfriend's gun, the gun went missing the day of the shooting, it has not been seen since that day, the shooter used a gun that looked similar to the girlfriend's missing gun, and the shell casings found at the crime scene were the same brand as the ammunition the girlfriend used and possessed in her home. Given this evidence, we do not see how counsel's failure to point out noncompliance with section 107A-2 of the Code or failure to request a nonpattern jury instruction about that noncompliance changed the outcome of the proceeding. See *Young*, 341 Ill. App. 3d at 383. Defendant cannot show prejudice.

¶ 31 III. CONCLUSION

¶ 32 For the reasons stated, we affirm the trial court's judgment.

¶ 33        Affirmed.